NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**EDWARD R. ANDREWS, JR.,**
*Claimant-Appellant*

**v.**

**ROBERT A. MCDONALD, SECRETARY OF VETERANS AFFAIRS,**
*Respondent-Appellee*

---

2015-7035

---

Appeal from the United States Court of Appeals for Veterans Claims in No. 11-2586, Chief Judge Bruce E. Kasold.

---

Decided: May 10, 2016

---

KENNETH M. CARPENTER, Law Offices of Carpenter Chartered, Topeka, KS, argued for claimant-appellant.

SHARI A. ROSE, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for respondent-appellee. Also represented by ERIC PETER BRUSKIN, BENJAMIN C. MIZER, ROBERT E. KIRSCHMAN, JR., MARTIN F. HOCKEY, JR.; Y. KEN LEE, RACHAEL BRANT, BRYAN THOMPSON, Office of General

Counsel, United States Department of Veterans Affairs, Washington, DC.

————————————

Before NEWMAN, MOORE, and STOLL, *Circuit Judges.*

MOORE, *Circuit Judge.*

Edward R. Andrews, Jr. appeals from the decision of the Court of Appeals for Veterans Claims ("Veterans Court") affirming the Board of Veterans' Appeals' ("Board") finding that there was no clear and unmistakable error ("CUE") in an initial disability rating decision made in 1983. We *vacate* and *remand* to the Veterans Court for a second time with the identical instruction we provided last time: "The Veterans Court should remand the case to the Board for a determination as to whether the record in 1983 established TDIU." *Andrews v. Shinseki*, 552 F. App'x 985 (Fed. Cir. 2014) (per curiam) ("*Andrews III*").

## BACKGROUND

This case, having been to our court four times now, has a long and tortured history, which we shall not repeat here. [1] The Department of Veterans Affairs ("VA") acknowledges that Mr. Andrews is a Vietnam War veteran, who was almost continually involved in combat during his service. In March 1983, Mr. Andrews filed a *pro se* motion to reopen his 1981 claim for benefits for service-connected mental disabilities, which the VA's regional office ("RO") had previously denied. Mr. Andrews submitted a third party medical report stating that he "perhaps more than any other of our referred veterans, typifies,

————————————

[1] *See Andrews v. West*, 25 F. App'x 997 (Fed. Cir. 2001) (per curiam) ("*Andrews I*"); *Andrews v. Nicholson*, 421 F.3d 1278, 1284 (Fed. Cir. 2005) ("*Andrews II*"); *Andrews III*.

indeed epitomizes, the Vietnam combat-related post-traumatic stress syndrome." Joint Appendix at 14 ("Croft Medical Opinion"), *Andrews III*, No. 13-7065, ECF No. 26. The report documented that he was "prone to violence . . . self-medicates . . . has a strong desire to achieve, to help, to take in others, and yet his self-destructive behaviors alienate him . . . and render him unemployed if not unemployable." *Id.* In June 1983, Mr. Andrews underwent a psychiatric examination by the VA and reported that he had been unemployed for the past four years, and felt that "his emotional symptoms prevent him from presently seeking or maintaining gainful employment." J.A. 61.[2]

In July 1983, the RO assigned Mr. Andrews a 10% disability rating for service-connected post-traumatic stress disorder ("PTSD"). Joint Appendix at 18–20 ("1983 Rating Decision"), *Andrews III*, No. 13-7065, ECF No. 26. The 1983 Rating Decision characterized Mr. Andrews' claim only as one for "service connection for post traumatic stress disorder," and did not mention a TDIU claim. *Id.*; *see* 38 C.F.R. § 4.16(b) (Total disability ratings for compensation based on unemployability of the individual). Less than one year later, still acting *pro se*, Mr. Andrews sought an increased disability rating in September 1984. Joint Appendix at 75, *Andrews III*, No. 13-7065, ECF No. 26. A December 1984 psychiatric examination report, conducted by the VA, noted that Mr. Andrews "is a Viet Nam veteran who saw considerable activity while in Viet Nam." *Id.* at 76–77. It discusses specific instances of personal combat, screams, blood shed, as well as his continuing nightmares, hostility, and aggression. *Id.* Like the 1983 Rating Decision, the resulting rating decision in January 1985 stated that it was an "[e]valuation of

---

[2]   J.A. refers to the parties' Joint Appendix in the instant appeal. *Andrews v. McDonald*, No. 15-7035, ECF No. 29.

service connected post traumatic stress disorder" and did not mention a TDIU claim. *Id.* at 78–79 ("1985 Rating Decision"). Directly thereafter, it found that Mr. Andrews "had 40 jobs since Viet Nam," "ha[d] been unable to work at all for the last four years," and "continue[d] to have difficulty controlling his emotions." *Id.* It concluded that Mr. Andrews suffered from "severe[] and chronic" PTSD and increased his disability rating to 30%. *Id.*

In 1991, Mr. Andrews, now represented by counsel, filed a request for an increased rating of 100%. In the ensuing rating decision in 1993, the VA awarded a 70% disability rating for "service connected post traumatic stress disorder," again finding Mr. Andrews' PTSD to be chronic and severe. *Id.* at 86–89 ("1993 Rating Decision"). Though the 1993 Rating Decision was silent with regard to a TDIU claim, it noted, "You [Mr. Andrews] reported that when you have worked it has been primarily doing yard work for brief periods of time and that you have not worked at all the past year." *Id.* at 88. In a letter dated December 8, 1993, Mr. Andrews' attorney expressly called Mr. Andrews' history of unemployability to the attention of the VA. In its 1994 Rating Decision, the VA awarded Mr. Andrews a 100% disability rating for his unemployability, effective as of 1991. *Id.* at 21–23 ("1994 Rating Decision"). For more than two decades, Mr. Andrews has been contesting the VA's failure to award him a TDIU rating in its 1983 Rating Decision. The VA awarded Mr. Andrews a 100% disability rating for unemployability as of 1991, and thus the only issue is whether that total disability rating should have an effective date of February 17, 1983.

## DISCUSSION

We review legal determinations of the Veterans Court *de novo*. *Prenzler v. Derwinski*, 928 F.2d 392, 393 (Fed. Cir. 1991). We "have power . . . , if the decision of the [Veterans Court] is not in accordance with law, to modify

or reverse the decision . . . or to remand the matter, as appropriate." 38 U.S.C. § 7292(e)(1). On appeal is Mr. Andrews' request for revision of the 1983 Rating Decision based on clear and unmistakable error ("CUE"). J.A. 28–35. Mr. Andrews argues that he raised a TDIU claim in 1983 that went unadjudicated by the VA until its 1994 Rating Decision, which granted TDIU with an effective date of 1991. As the Veterans Court correctly observed, there are a number of ways for a veteran to appeal the failure of the VA to adjudicate a claim including "an appeal of an effective date decision [which] is the proper method *to obtain direct review* of an assertion as to when a claim was first raised." *Evans v. McDonald*, 27 Vet. App. 180, 185 n.3 (2014) (en banc) (citations omitted). Also, the "[s]ecretary's failure to adjudicate a reasonably raised claim can be the basis of the CUE motion." *Id. See also Andrews II*, 421 F.3d at 1281 ("[W]e clearly held in *Roberson* that the VA's failure to consider a TDIU claim in this manner is properly challenged through a CUE motion."). In this case, Mr. Andrews filed a CUE motion, alleging that the VA failed to adjudicate his implicit claim for TDIU, which Mr. Andrews made *pro se* in 1983. As a result, he seeks "an effective date of February 17, 1983, for an award of disability compensation at the total rate based on unemployability." J.A. 35.

Throughout the earlier proceedings in this case, the government (including the VA and the Board) argued that the VA did not err in failing to adjudicate Mr. Andrews' implicit TDIU claim because his 1983 filing did not raise an implicit TDIU claim. *See, e.g.*, J.A. 61–62 ("Even if the Board accepts (which it does not) that the evidence of record at the time of the July 1983 rating decision should have been interpreted as an implicit claim for TDIU. . ."); *Andrews v. Shinseki*, No. 11-2586, 2012 WL 6186154, at *1 (Vet. App. Dec. 12, 2012) ("In a 2006 rating decision and a 2007 Statement of the Case (SOC), the RO found that Mr. Andrews's claim had not been referred for TDIU

consideration in 1983 because there was no record evi-
dence at that time that Mr. Andrews was unemployed
solely as a result of service-connected disabilities."),
*vacated*, 552 F. App'x 985 (Fed. Cir. 2014). Prior to our
decision in *Roberson v. Principi*, 251 F.3d 1378 (Fed. Cir.
2001), the government consistently argued that there was
no informal claim for TDIU if the Veteran "did not com-
municate in writing a request for a determination of
entitlement or a belief in entitlement to a TDIU rating."
Brief for Respondent-Appellee at 17, *Roberson v. Principi*,
251 F.3d 1378 (Fed. Cir. 2001). In *Roberson*, the govern-
ment argued that "before the VA can adjudicate a claim
for benefits – even an informal claim for benefits – the
claimant must submit a written statement identifying the
benefit and expressing his intent to seek it." *Id.* at 20.
Because no such statement was made, the government
argued that "even assuming that the medical reports in
Mr. Roberson's file establish a well-grounded claim for
TDIU, the VA could not have breached its duty to assist . .
. because Mr. Roberson did not file a TDIU claim." *Id.* at
22. We recognized that the Court of Appeals for Veterans
Claims had held that to qualify as an informal claim,
"Roberson was required under section 3.155(a) to specifi-
cally request entitlement to the benefit sought – in this
case TDIU [and that] because Roberson did not make a
specific request for TDIU, the VA was not obligated to
adjudicate such a claim." *Roberson*, 251 F.3d at 1382. We
reversed, making it clear that the government's view that
there was no informal claim to be adjudicated unless the
veteran had alleged a specific entitlement in writing, was
incorrect:

> The government argues that, because Roberson
> never specifically requested TDIU in his original
> claim, he cannot be considered to have filed a
> TDIU claim despite his submission of evidence re-
> garding his unemployability. We disagree.

> Once a veteran submits evidence of a medical disability and makes a claim for the highest rating possible, and additionally submits evidence of unemployability, the "identify the benefit sought" requirement of 38 C.F.R. § 3.155(a) is met and the VA must consider TDIU.

*Roberson*, 251 F.3d at 1384. The government's pre-*Roberson* position, that absent a specific written request for TDIU, there was no informal claim for TDIU to be adjudicated, is consistent with the position it took with regard to Mr. Andrews' TDIU claim: "[T]he VA Regional Office had no reason to consider an extra-schedular entitlement to unemployability [in 1983]." Joint Appendix at 112 (VA's 3/30/2007 Statement of the Case), *Andrews III*, No. 13-7065, ECF No. 26. The government maintained this position throughout most of the 35 years of adjudication over this claim. *See, e.g.*, *Andrews*, 2012 WL 6186154, at *1 ("[Mr. Andrews' 1983] claim for benefits for PTSD and evidence of employability did not constitute an implicit claim for TDIU.").

In the last appeal, we put to rest any lingering doubt about whether Mr. Andrews' 1983 filing raised an implicit claim for TDIU that required VA's adjudication. *Andrews III* ("We hold that, as a matter of law, Mr. Andrews raised a TDIU claim in his 1983 filing to the VA."). And we remanded to the Veterans Court with instructions that it remand to the Board for adjudication of this TDIU claim. The Veterans Court, however, refused to follow our mandate in *Andrews III*. On remand, the Veterans Court concluded that there was no jurisdiction over whether the 1983 RO committed CUE in not awarding TDIU, and thus the court refused to follow our mandate. *Andrews v. Shinseki*, No. 11-2586, 2014 WL 2000348 (Vet. App. May 16, 2014). The Veterans Court held that Mr. Andrews' CUE claim was "that the 1983 rating decision *failed to consider* TDIU," not that "the 1983 rating decision committed CUE in *not awarding* TDIU." *Id.* at *2. The

Veterans Court refused to follow our remand order concluding that we had no jurisdiction to order remand because the remand was based upon a CUE assertion which had not been made by Mr. Andrews. *Id.* at *4. We do not agree with the Veterans Court's assessment of jurisdiction.

Mr. Andrews' CUE claim is quite straight-forward: "The failure of the VA July 28, 1983, rating decision to consider Mr. Andrews' entitlement to an initial rating in the form of an extra-schedular rating based upon the evidence of record . . . ." J.A. 35. Mr. Andrews has consistently argued that clear and unmistakable error lies in the VA's failure to recognize and adjudicate his 1983 implicit claim for TDIU. *See, e.g.*, J.A. 35 (Aug. 26, 2005, Request for Revision of the July 28, 1983, Rating Decision); J.A. 10 (Jun. 5, 2014, Motion for Single Judge Reconsideration, or In the Alternative Referral for a Panel Decision). We agreed with Mr. Andrews, which is why in *Andrews III*, we ordered the Veterans Court to remand to the Board for Mr. Andrews' TDIU claim to be adjudicated. *Andrews III* ("The Veterans Court should remand the case to the Board for a determination as to whether the record in 1983 established TDIU.").

On appeal, the government expresses confusion over our *Andrews III* decision: "It is likewise unclear from this Court's opinion in *Andrews III* whether this Court rejected, as a legal matter, the notion that an implicitly raised claim for TDIU could also be implicitly denied . . . ." Resp't-Appellee Br. 23. To clarify, we did not, and do not, adopt the sweeping rule suggested by the government's statement. An implicitly raised claim can be implicitly denied by government action. However, implicit denial, as a legal matter, requires knowledge of the claim, adjudication of the claim, and notice to the veteran of the adjudication of the claim. The government cannot, as a legal matter, argue that there was no claim in need of adjudication, but if there had been, then it was implicitly denied.

Failure to adjudicate cannot be shielded by claims of implicit denial. As we explained in *Adams v. Shinseki*, 568 F.3d 956 (Fed. Cir. 2009), one of the first cases to consider the concept of implicit denial, whether a claim was implicitly denied by a VA decision comes down to whether that decision "provided sufficient information for a reasonable claimant to know that he would not be awarded benefits for his asserted disability." 568 F.3d at 963. "The implicit denial rule is, at bottom, a notice provision." *Id.* at 965. The statute, 38 U.S.C. § 5104, requires:

> (a) In the case of a decision by the Secretary under section 511 of this title affecting the provision of benefits to a claimant, the Secretary shall, on a timely basis, provide to the claimant (and to the claimant's representative) notice of such decision. The notice shall include an explanation of the procedure for obtaining review of the decision.

> (b) In any case where the Secretary denies a benefit sought, the notice required by subsection (a) shall also include (1) a statement of the reasons for the decision, and (2) a summary of the evidence considered by the Secretary.

Thus, the statute requires that if the Secretary denies a benefit sought, there must be notice including a statement of the reasons for the decision and a summary of the evidence considered by the Secretary. *Id.* In *Adams*, we explained: "The 'implicit denial' rule provides that, in certain circumstances, a claim for benefits will be deemed to have been denied, and thus finally adjudicated, even if the [VA] did not expressly address that claim in its decision." 568 F.3d at 961. The implicit denial rule applies "to cases in which the [VA's] decision is clear but not expressed, [and] it reflects an appropriate balance between the interest in finality and the need to provide notice to veterans when their claims have been decided."

*Id.* at 963. As the Veterans Court explained in its decision in *Ingram v. Nicholson*, 21 Vet. App. 232 (2007), a claim is deemed denied when the regional office decision "discusses a claim in terms sufficient to put the claimant on notice that it was being considered and rejected, then it constitutes a denial of that claim even if the formal adjudicative language does not 'specifically' deny that claim." 21 Vet. App. at 255. The decision has to provide some notice to the veteran that his claim was adjudicated and denied. There are no magic words required and each case will depend upon the facts presented. In *Adams*, we noted that while the decision at issue only addressed Mr. Adams' formal claim, "the decision alluded to the underlying claims in a manner that put Mr. Adams on notice that his informal claim . . . was also denied." *Adams*, 568 F.3d at 963. And while the Board's decision in *Adams* never expressly addressed Mr. Adams' informal claim for bacterial endocarditis, the Board found that the record did not establish "active rheumatic fever *or other active cardiac pathology.*" *Id.* The Veterans Court in *Adams* held that in those circumstances, the Board's decision "reasonably informed the appellant that a claim for *any heart condition,* including endocarditis, was denied." *Id.* (emphasis added). Similarly in *Deshotel v. Nicholson*, 457 F.3d 1258 (Fed. Cir. 2006), the regional office noted when it granted service connection for a head injury that there was no evidence of a psychiatric symptomology. *Adams*, 568 F.3d at 963. There was no similar statement by the RO or Board in their decisions which indicated that Mr. Andrews' employability had been considered. Implicit denial simply cannot be stretched to include a circumstance when the adjudicator believed that there was no claim in need of adjudication or no evidence in the decision gave notice to the veteran that the adjudicator was considering and adjudicating the claim.

Implicit denial requires adjudication. It does not shield the government from failure to adjudicate. And

Mr. Andrews has established that the agency clearly and unmistakably erred in failing to recognize and failing to adjudicate his 1983 TDIU claim. There is no discussion of Mr. Andrews' claim for TDIU in the ratings decisions in 1983 or 1985. 1983 Rating Decision; 1985 Rating Decision. And in fact, these decisions expressly acknowledge the extensiveness of the Veteran's unemployability due to his PTSD. 1983 Rating Decision ("The report of the VA examination conducted 6/14/83 states the veteran has been unemployed for approximately four years."); 1985 Rating Decision ("Outpatient treatment reports show . . . [t]he veteran has flashbacks from Viet Nam. Report 10-3-84 relates that the veteran rages and fears hurting someone. The veteran has blackouts and has hurt people and has mood swings. [H]e relates having had 40 jobs since Viet Nam. Recently when he tore up a van, he was screaming in Vietnamese. . . . Cited VA examination, again relates that the veteran has been unable to work at all for the last four years.").[3] There is nothing in those

---

[3] On the 1983 Rating Decision, box number 14, employability, the RO checked the box for "employable or not an issue." Since there was absolutely no evidence that Mr. Andrews was employable at that time, and in fact he had been unemployed for the preceding four years and undergoing extensive treatment for what the VA found to be "chronic" PTSD from his combat related service, the record can only support the conclusion that the RO checked the box because it determined that employability was "not an issue." This is consistent with Board findings and government arguments made throughout these proceedings that no TDIU claim was implicitly raised by Mr. Andrews in 1983, thus employability was "not an issue." In fact, the government has not argued that Mr. Andrews was employable in 1983 or that the record could support a finding that he was employable. Moreo-

decisions which could have conveyed to Mr. Andrews that the government acknowledged, much less had adjudicated, his TDIU claim. And this is not surprising given that it was the government's position that there was no TDIU claim filed that required any adjudication. The government argues that the VA's award of a 10% rating for PTSD in 1983 and a 30% rating for PTSD in 1985 necessarily means a denial of any greater rating. To the extent that the government is arguing that a decision awarding a particular percentage for a particular disability necessarily provides the veteran with the required notice that all other benefits sought are deemed denied, we cannot adopt such a sweeping rule. To have implicitly denied a claim, the government must have recognized and adjudicated the claim and provided notice to the veteran of the adjudication. If, as here, the government did not recognize a claim, it cannot have implicitly denied the claim.

We note that in *Williams v. Peake*, 521 F.3d 1348 (Fed. Cir. 2008), we held that "subsequent final adjudication of a claim which is identical to a pending claim that had not been finally adjudicated terminates the pending status of the earlier claim." 521 F.3d at 1351. As we explained, "the later disposition, denying the claim on its merits, also decides that the earlier identical claim must fail." *Id.* The later decision gives notice of refusal to grant an earlier effective date for the same claim. *Id.* In this case, however, when the VA did finally adjudicate Mr. Andrews' TDIU claim, it determined that he was entitled to a 100% disability rating for unemployability. 1994 Rating Decision, Joint Appendix at 21–23, *Andrews III*, No. 13-7065, ECF No. 26. Thus, in this case, the VA's later determination of entitlement cannot save its earlier failure to adjudicate. We note here again as we did in the

---

ver, in the 1985 Rating Decision, box 14 was left completely blank.

last remand order that the 1994 Rating Decision granting Mr. Andrews 100% disability for TDIU effective from 1991 explains that he had not worked for the previous year and worked only twenty hours per week at his self-employed lawn service for the four years preceding that date.  1994 Rating Decision.  The 1983 Rating Decision discussed a medical opinion that Mr. Andrews' PTSD rendered him "unemployed if not unemployable."  1983 Rating Decision (citing Croft Medical Opinion).  The VA's June 1983 medical report also noted that "[his] work history since leaving the service has been quite sporadic, and he has been unemployed for the past four years."  Joint Appendix at 16, *Andrews III*, No. 13-7065, ECF No. 26.  The 1985 Rating Decision notes the same.  The evidence of record is not in dispute.

CONCLUSION

Mr. Andrews raised a TDIU claim in his 1983 filing and as we held in *Andrews III*, that claim was not adjudicated by the government.  Mr. Andrews has thus established his CUE claim.  Consequently, this case must be remanded to the Veterans Court, which is ordered to remand the case to the Board for adjudication of this unresolved claim for TDIU.

**VACATED AND REMANDED WITH INSTRUCTIONS**

COSTS

Costs to Mr. Andrews.