NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**PHYLLIS S. BATSON,**
*Claimant-Appellant*

**v.**

**DAVID J. SHULKIN, SECRETARY OF VETERANS AFFAIRS,**
*Respondent-Appellee*

---

2016-1723

---

Appeal from the United States Court of Appeals for Veterans Claims in No. 14-1916, Judge Bruce E. Kasold.

---

Decided: May 3, 2017

---

KENNETH M. CARPENTER, Law Offices of Carpenter Chartered, Topeka, KS, argued for claimant-appellant.

WILLIAM JAMES GRIMALDI, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for respondent-appellee. Also represented by ROBERT E. KIRSCHMAN, JR., MARTIN F. HOCKEY, JR., BENJAMIN C. MIZER; BRIAN D. GRIFFIN, MARTIE ADELMAN, Office of General Counsel, United States Department of Veterans Affairs, Washington, DC.

———————————

Before MOORE, LINN, and STOLL, *Circuit Judges.*

MOORE, *Circuit Judge.*

Phyllis S. Batson appeals from the decision of the Court of Appeals for Veterans Claims ("Veterans Court") affirming the Board of Veterans' Appeals' ("Board") finding that Mr. Batson's 1993 claim for special monthly pension for aid and attendance was implicitly denied. We agree with Mr. Batson that the Board erred as a matter of law in finding that an implicit claim that was unrecognized until 2011 was implicitly denied in 1993–94. We *vacate* and *remand* to the Veterans Court which is ordered to remand to the Board for further proceedings consistent with this opinion.

## BACKGROUND

Mr. Batson served in the Air Force from 1963 to 1968. In August 1993, following surgery for retinal detachment at a VA hospital that left him blind in one eye, he filed an application for compensation or pension based on his blindness ("the 1993 application"), in which he noted: "will apply for SSI—A&A [aid and attendance]? → legally blind." J.A. 16–19. In September 1993, the regional office ("RO") awarded Mr. Batson pension effective September 1, 1993 ("the September 1993 decision"). After receiving an additional statement from Mr. Batson's physician, the RO issued another rating decision ("the November 1993 decision") confirming Mr. Batson's continued entitlement to pension benefits. In a January 1994 letter ("the 1994 letter"), the RO restated that it had reviewed all submitted medical evidence and confirmed Mr. Batson's entitlement to pension benefits.

In May 2005, Mr. Batson submitted a form expressly requesting a special monthly pension ("SMP") for aid and attendance based in part on his blindness. SMP is an

increased rate of pension payable to a pension beneficiary who is in need of regular aid and attendance or is housebound. 38 U.S.C. § 1521(d); 38 C.F.R. § 3.351. The RO awarded Mr. Batson SMP for aid and attendance, effective May 13, 2005 (the date that Mr. Batson was examined for his 2005 application).

Multiple Board decisions and joint motions for remand ("JMRs") followed. Mr. Batson appealed the RO's decision to the Board, claiming entitlement to SMP for aid and attendance effective September 1, 1993 (the effective date of his original pension). In 2007, the Board denied Mr. Batson an earlier effective date for the SMP, finding there was "no evidence of a claim for [SMP] prior to May 13, 2005 or any indication that entitlement to this benefit, based on medical evidence, arose prior to the examination conducted on that date." J.A. 85. Mr. Batson appealed to the Veterans Court, which granted the parties' JMR because the Board did not discuss whether Mr. Batson's remarks in the 1993 application constituted an implicit claim for SMP.

On remand in 2009, the Board again denied Mr. Batson's claims for an earlier effective date based on a finding that his 1993 application did not contain an implicit claim for SMP for aid and attendance. Mr. Batson again appealed to the Veterans Court, which granted the parties' JMR because the Board failed to read the 1993 application in a light favorable to the veteran and failed to address the medical evidence submitted with the 1993 application.

On remand in 2011, the Board found that Mr. Batson's 1993 application could be liberally read as an application for SMP for aid and attendance. It found that the 1993 SMP claim was implicitly denied in the September 1993 decision "and subsequent rating actions" and denied his claim for an earlier effective date. Mr. Batson again appealed to the Veterans Court, which

granted the parties' third JMR because the Board failed to consider the factors required for implicit denial.

On remand in 2014, the Board again found that Mr. Batson's 1993 application could be liberally read as an application for SMP. It found that the 1993 claim for SMP was implicitly denied in the September and November 1993 decisions and the 1994 letter. Finally, the Board found that even if his 1993 SMP claim had been pending until 2005, Mr. Batson had not demonstrated an impairment sufficient to entitle him to aid and assistance pursuant to 38 C.F.R. §§ 3.351(c)(1) and 3.352(a) until 2005.

Mr. Batson appealed, and the Veterans Court affirmed. It held that the Board properly evaluated whether the 1993 claim was implicitly denied and the date Mr. Batson became eligible for SMP under 38 C.F.R. §§ 3.551(c)(1) and 3.352(a). Mr. Batson timely petitioned this court for review. We have jurisdiction pursuant to 38 U.S.C. § 7292(d)(1).

## DISCUSSION

The scope of our review of a Veterans Court decision is limited by statute. 38 U.S.C. § 7292. We may review "the validity of a decision of the [Veterans] Court on a rule of law or of any statute or regulation . . . or any interpretation thereof (other than a determination as to a factual matter)" that the Veterans Court relied on in making the decision. *Id.* § 7292(a). We review statutory and regulatory interpretations by the Veterans Court de novo. *Hudgens v. McDonald*, 823 F.3d 630, 634 (Fed. Cir. 2016).

Mr. Batson argues that the 1993 decisions and 1994 letter could not have implicitly denied his SMP claims because up until 2011, the government repeatedly held that no SMP claim existed. We agree and hold that the Veterans Court erred as a matter of law in affirming the Board's finding that Mr. Batson's claim was implicitly denied.

The judicially created implicit denial rule provides that, in certain circumstances, a veteran's claim for benefits may be deemed denied, even if the VA did not expressly address the claim in its decision. *Adams v. Shinseki*, 568 F.3d 956, 961 (Fed. Cir. 2009). The doctrine applies to cases in which the VA's decision "is clear but not expressed," and it "reflects an appropriate balance between the interest in finality and the need to provide notice to veterans when their claims have been decided." *Id.* at 963. "[T]he key question in the implicit denial inquiry is whether it would be clear to a reasonable person that the [decision] that expressly refers to one claim is intended to dispose of others as well." *Id.* at 964.

Implicit denial requires (1) knowledge of the claim, (2) adjudication of the claim, and (3) notice to the veteran of the adjudication of the claim. *Id.* at 963–64. It may be invoked only when the VA's discussion of the claim in its decision is sufficient to put the veteran on notice that his claim was considered and rejected. *Id.* (citing *Deshotel v. Nicholson*, 457 F.3d 1258 (Fed. Cir. 2006)). It defies logic to argue that there was no claim in need of adjudication, and then hold if there was, it was implicitly denied. *Andrews v. McDonald*, 646 F. App'x 1001, 1006 (Fed. Cir. 2016). Because "the implicit denial rule is, at bottom, a notice provision," *Adams*, 568 F.3d at 965, implicit denial of a claim must notify the veteran that his claim was considered and adjudicated. *See Deshotel*, 457 F.3d at 1260–61 (informal claim for psychiatric disability implicitly denied along with a claim for physical disability resulting from head injury because the RO decision noted that the "VA exam shows *no psychiatric symptomatology noted at present time*"); *Adams*, 568 F.3d at 959–60, 963 (informal claim for service connection for endocarditis implicitly denied along with formal claim for rheumatic heart disease because the Board concluded that the veteran's medical records "do not disclose active rheumatic fever *or other active cardiac pathology*"); *Andrews*, 646 F. App'x at

1003, 1007 (informal unemployability claim was not implicitly denied where the rating decision did not mention employability and no VA statement indicated employability had been considered).

*Deshotel* does not, as the government argues, stand for the proposition that a favorable decision awarding benefits should be construed as an implicit denial of all other benefits implicitly sought. Such a holding would be clearly inconsistent with the statute, which requires that the notice of denial of benefits include "(1) a statement of the reasons for the decision, and (2) a summary of the evidence considered by the Secretary." 38 U.S.C. § 5104(b). The government does not even allege that the 1993 decisions or the 1994 letter met the statutory notice requirement. As we explained in *Adams* and *Andrews*, implicit denial occurs only when the regional office decision "discusses a claim in terms sufficient to put the claimant on notice that it was being considered and rejected." *Adams v. Shinseki*, 568 F.3d at 963 (quoting *Ingram v. Nicholson*, 21 Vet. App. 232, 255 (2007)); *Andrews*, 646 F. App'x at 1006 (same). In both *Deshotel* and *Adams*, the VA decisions contained language reasonably construed as recognizing the implicit claim. *Deshotel*, 457 F.3d at 1259–60; *Adams*, 568 F.3d at 963. No such language was present in the VA decision in *Andrews* and no such language is present in the 1993 decisions or the 1994 letter in this case. 646 F. App'x at 1007. Implicit denial requires adjudication and notice of that adjudication. Nothing less would satisfy the statute.

Under the proper legal framework, Mr. Batson's 1993 SMP claim could not be found to have been implicitly denied by the September and November 1993 decisions and the 1994 letter. These documents merely show that the RO approved Mr. Batson's claim for disability pension effective September 1, 1993. They did not discuss or mention aid and attendance or any other SMP-related considerations. Notification that Mr. Batson had been

granted pension benefits is not, without more, notice that his claim for SMP for aid and attendance had been denied. "Implicit denial simply cannot be stretched to include a circumstance when the adjudicator believed that there was no claim in need of adjudication or no evidence in the decision gave notice to the veteran that the adjudicator was considering and adjudicating the claim." *Andrews*, 646 F. App'x at 1007. Because it is now undisputed that Mr. Batson's 1993 claim included an implicit claim for SMP for aid and attendance, and a claim remains pending until it is adjudicated, *Adams*, 568 F.3d at 960, Mr. Batson's implicitly raised SMP claim remained pending from 1993 until SMP was granted in 2005.

As we have previously stated, "if the government did not recognize a claim, it cannot have implicitly denied the claim." *Andrews*, 646 F. App'x at 1007. Here, the government did not recognize Mr. Batson's claim until after it was supposedly implicitly denied in 2011, when the Board (after two joint remands) found that the 1993 application included an implicit claim for SMP. The VA cannot now, seventeen years after Mr. Batson's implicit claim, use the implicit denial doctrine to shield its failure to adjudicate the claim.

Mr. Batson argued, in supplemental briefing to this court, that if the government did not recognize his implicit claim in 1993, then it did not comply with its duty to assist him develop this claim. For example, it gave Mr. Batson no notice of the information necessary to substantiate a claim for SMP for aid and attendance. We will not consider in the first instance whether the VA satisfied its duty to assist in this case or what that duty to assist entailed. Suffice it to say that there is a clear and simple logic to Mr. Batson's current argument: how can the government have met its duty to assist him in developing a claim that it said had not been raised? This would be for the Board to adjudicate in the first instance.

We note that the Board also held:

> Even assuming, without conceding, that the claim remained pending and unadjudicated, the claim for an earlier effective date still fails as the evidence preponderates against finding that the criteria for special monthly pension based on the need for regular aid and attendance [under 38 C.F.R. §§ 3.351(c)(1) and 3.352(a)] were met prior to May 13, 2005.

J.A. 204–05. We have no authority to review application of law to fact. We are, however, uncertain as to whether the numerous legal errors made in the course of these proceedings regarding the law of implicit claiming and implicit denial affected the Board's effective date analysis. We leave it to the Board on remand to consider these issues and to determine in the first instance, if it is at issue in this case, whether a failure to assist the Veteran in developing his claim impacts its analysis of the effective date of his claim. We therefore vacate the decision of the Veterans Court and remand to the Veterans Court which is ordered to remand this case to the Board for reconsideration.

## CONCLUSION

For the foregoing reasons, the decision of the Veterans Court is *vacated* and *remanded* with instructions for further proceedings consistent with this opinion.

### VACATED AND REMANDED WITH INSTRUCTIONS

## COSTS

Costs to Mr. Batson.