﻿Citation Nr: AXXXXXXXX
Decision Date: 12/17/18 Archive Date: 12/17/18

DOCKET NO. 180815-272
DATE: December 17, 2018
ORDER
Entitlement to a rating in excess of 30 percent for neuralgia of the right fifth (trigeminal) cranial nerve from October 20, 2016, to December 18, 2017, is denied.
Entitlement to an effective date earlier than October 20, 2016, for the award of a total disability rating based on individual unemployability (TDIU) due to service-connected disabilities is denied.
FINDINGS OF FACT
1. From October 20, 2016 to December 18, 2017, neuralgia of the right fifth cranial nerve has been manifested by severe incomplete paralysis; the Veteran’s intermittent right eye pain and blurred vision occur in the context of his service-connected migraine headache disability.
2. A July 2012 final rating decision granted an increased rating of 50 percent for migraine headaches, effective March 8, 2011, and implicitly denied entitlement to a TDIU.
3. From March 8, 2011, the Veteran met the schedular threshold criteria for entitlement to a TDIU due to service-connected migraine headaches and neuralgia of the right fifth cranial nerve, and contemporaneous evidence of record indicated these disabilities precluded him from securing or following a substantially gainful occupation.
4. A September 2014 final rating decision, in pertinent part, denied increased ratings for service-connected migraine headaches, neuralgia of the right fifth cranial nerve, and hypochromic borderline normocytic anemia, and implicitly denied entitlement to a TDIU.
5. The Veteran did not submit an informal or formal claim for entitlement to a TDIU until April 2017.
CONCLUSIONS OF LAW
1. The criteria for entitlement to an increased rating for neuralgia of the right fifth cranial nerve from October 20, 2016 to December 18, 2017 have not been met. 38 U.S.C. §§ 1155, 5107(b) (2012); 38 C.F.R. § 4.124a, Diagnostic Code 8405 (2017).
2. The criteria for entitlement to an effective date earlier than October 20, 2016 for the award of a TDIU due to service-connected disabilities have not been met. 38 U.S.C. § 5110 (2012); 38 C.F.R. § 3.400 (2017).
REASONS AND BASES FOR FINDINGS AND CONCLUSIONS
The Veteran served on active duty from September 2004 to January 2007. This matter comes before the Board of Veterans’ Appeals (Board) from January 2017 and November 2017 rating decisions. In the first decision, the agency of original jurisdiction (AOJ) denied entitlement to a disability rating in excess of 10 percent for neuralgia of the right fifth cranial nerve. In the latter decision, the AOJ granted a higher, 30 percent rating for neuralgia of the right fifth cranial nerve and entitlement to a TDIU, each effective October 20, 2016, which is the date VA received the claim for an increased rating. The AOJ issued the November 2017 rating decision to the Veteran with a notification letter on December 18, 2017. 
On August 23, 2017, the President signed into law the Veterans Appeals Improvement and Modernization Act, Pub. L. No. 115-55 (to be codified as amended in scattered sections of 38 U.S.C.), 131 Stat. 1105 (2017), also known as the Appeals Modernization Act (AMA). This law creates a new framework for Veterans dissatisfied with VA’s decision on their claim to seek review. The Veteran chose to participate in VA’s test program RAMP, the Rapid Appeals Modernization Program. This decision has been written consistent with the new AMA framework.
1. Entitlement to a rating in excess of 30 percent for neuralgia of the right fifth (trigeminal) cranial nerve from October 20, 2016 to December 18, 2017
The Veteran contends that a higher, 50 percent rating is warranted for his service-connected neuralgia of the right fifth cranial nerve. 
Disability ratings are determined by applying the criteria set forth in VA’s Schedule for Rating Disabilities, which is based on the average impairment of earning capacity. Individual disabilities are assigned separate diagnostic codes. 38 U.S.C. § 1155 (2012); 38 C.F.R. § 4.1 (2017). The basis of disability evaluations is the ability of the body as a whole, or of the psyche, or of a system or organ of the body to function under the ordinary conditions of daily life including employment. 38 C.F.R. § 4.10. Where there is a question as to which of two ratings should be applied, the higher rating will be assigned if the disability picture more nearly approximates the criteria required for that rating. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7. In determining the severity of a disability, the Board is required to consider the potential application of various other provisions of the regulations governing VA benefits, whether or not they were raised by the Veteran, as well as the entire history of the veteran’s disability. 38 C.F.R. §§ 4.1, 4.2; Schafrath v. Derwinski, 1 Vet. App. 589, 595 (1991).
Generally, when an increase in the disability rating is at issue, the present level of disability is of primary concern. Francisco v. Brown, 7 Vet. App. 55, 58 (1994). When the appeal arises from an initial assigned rating, consideration must be given to whether staged ratings should be assigned to reflect entitlement to a higher rating at any point during the pendency of the claim. Fenderson v. West, 12 Vet. App. 119 (1999). Staged ratings are also for consideration in any increased rating claim in which distinct time periods with different ratable symptoms can be identified. Hart v. Mansfield, 21 Vet. App. 505, 510 (2007). Analysis in this decision has therefore been undertaken with consideration of the possibility that different ratings may be warranted for different time periods.
For the period on appeal from October 20, 2016 through December 18, 2017, the Veteran’s neuralgia of the right fifth cranial nerve is rated 30 percent disabling pursuant to 38 C.F.R. § 4.124a, Diagnostic Code 8405, which in turn is rated under Diagnostic Code 8205 based on paralysis of the fifth (trigeminal) cranial nerve. Under these criteria, a 30 percent rating is warranted for severe incomplete paralysis. A 50 percent rating is assigned for complete paralysis. The Note following Diagnostic Code 8205 indicates that the degree of paralysis of the fifth cranial nerve is dependent upon the relative degree of sensory manifestation or motor loss. 
The Veteran was afforded a VA fee-basis examination in November 2016. He described the history of his cranial nerve disability since having wisdom teeth extracted during active duty service in 2005. Current symptoms included pain and numbness to the right side of the face, including severe pain at the right bottom lip, throat, and jaw line; a sensation of his teeth falling out from the right front side; and moderate difficulty chewing and swallowing. Reported examination findings included normal muscle strength of cranial nerve V (five) involving the muscles of mastication and decreased sensation of cranial nerve V at the right mid- and lower-face. The examining physician summarized that the Veteran’s right fifth cranial nerve disability was manifested by a severe incomplete degree of paralysis and did not impact his ability to work.
Having considered the medical and lay evidence of record, the Board finds that a rating in excess of 30 percent for neuralgia of the right fifth cranial nerve is not warranted at any time during the appeal.
Throughout the appeal the Veteran’s neuralgia of the right fifth cranial nerve has been manifested by severe incomplete paralysis with normal muscle strength (no motor loss), but with decreased sensation. These findings are consistent with the 30 percent rating currently assigned. A higher, 50 percent rating is not warranted at any time during the appeal because the evidence of record, including VA treatment records covering the applicable appeal period and the one-year “look-back” period prior to receipt of the claim, show severe incomplete paralysis with sensation grossly diminished to light touch, but do not show complete paralysis. Similarly, the Board has considered the Veteran’s reported symptoms of pain and numbness, a sensation of his teeth falling out, and moderate difficulty chewing and swallowing, but finds that they are not indicative of complete paralysis. 38 U.S.C. § 5110(b)(2); 38 C.F.R. § 3.400(o)(2). 
The Board acknowledges the April 2017 correspondence from the Veteran’s attorney, arguing that a 50 percent rating is warranted for trigeminal neuralgia due to severe pain, severe paresthesia, and severe numbness. Citing Riley v. Brown, 15 Vet. App. 311 (1997) (quoting Dorland’s Illustrated Medical Dictionary 1127 (28th ed. 1994)), the attorney emphasized that “[t]rigeminal neuralgia involves excruciating episodic pain in the area supplied by the trigeminal nerve.” While the attorney accurately points to the Veteran’s symptoms of severe pain, paresthesias, and numbness affecting the right lower face, side of his mouth, and throat, the fact remains that the medical evidence demonstrates these manifestations result in severe incomplete paralysis of the trigeminal nerve, but not complete paralysis. Therefore, a 50 percent rating is not warranted.
In the same correspondence, the attorney also argued that a separate disability rating is warranted for blurred or obstructed vision with pain in the right eye, asserting that the Veteran’s claim, which was received October 20, 2016, “included the issues of paralysis of accommodation (due to neuropathy of the oculomotor nerve (cranial nerve III) ([Diagnostic Code] 6030, impairment of central visual acuity, and any other conditions of the eye that were reasonably encompassed by these symptoms.”
By way of history, the Board notes that when service connection was initially granted for right facial neuralgia, the April 2007 rating decision specifically detailed that medical evidence of record demonstrated that the optic, oculomotor, and trochlear nerves (cranial nerves II, III, and IV, respectively) were normal and without any impairment. Indeed, while the Veteran complained of loss of vision in both eyes, right worse than left, due to nerve damage from his in-service dental procedure and from associated migraine headaches during a July 2006 medical evaluation board (MEB) examination, “no substantial clinical findings were present to support” the complaint of an eye disorder.
After separation from service, the Veteran presented for a VA neurological consultation in August 2009 with complaints of abnormal sensation on the right side of his face and sharp, throbbing, right-sided headaches behind his right eye and temple and the top of his head since his in-service dental procedure. On examination, cranial nerves II (optic), III (oculomotor), IV (trochlear), and VI (abducens) were intact. The ophthalmic nerve, which is one of the three divisions of the trigeminal nerve or V1, was also intact. In November 2009, he presented to the emergency department for a migraine headache. He endorsed throbbing pain, photophobia, and eye pain mainly on the right. He denied any vision loss or diplopia, but reported occasionally having some blurred vision in the right eye. The diagnosis was cephalgia and the physician recommended an ophthalmology evaluation.
During a February 2010 ophthalmology consultation, the Veteran described his history of migraine headaches, stating that his vision gets blurry and he sometimes also has aching eye pain with the headaches. He reported that between headaches, his vision was fine and his eyes feel okay. On examination, cranial nerves II through XII were intact except for the mandibular division of the trigeminal nerve (V3). The assessment was mild optic nerve edema right eye greater than left eye with optic disc hemorrhage in the right eye. During a follow-up appointment later that month, the ophthalmologist indicated that MRI/MRV had ruled out an intracranial process for the Veteran’s eye symptoms. The assessment was mild optic nerve edema, right greater than left, with resolved optic nerve disc hemorrhage and refractive errors of hyperopia and astigmatism. The Veteran received a prescription for glasses. A March 2010 addendum note indicated that optic nerve head photos were consistent with optic disc drusen as cause for pseudopapilledema. An April 2014 neurology clinic note reflects that the Veteran’s papilledema had resolved bilaterally. Subsequent VA treatment records reflect the Veteran’s reports of continued right facial pain and migraine headaches, including pain near the right eye; his history of pseudopapilledema; ongoing care for refractive errors of both eyes; and continued examination findings of intact ophthalmic (trigeminal nerve V1), optic, oculomotor, trochlear, and abducens cranial nerves.
In summary, the medical evidence of record shows the cranial nerves involving eye sensation and motor function are intact. Moreover, the medical evidence, including the Veteran’s lay statements to treatment providers, identifies the location of his service-connected headaches occurring in the right retro-orbital, temporal-parietal region and indicates his episodes of blurred vision occur in the context of his migraine headaches. These migraine headache symptoms of eye pain and blurred vision are already contemplated in the 50 percent rating assigned for this disability. Finally, his refractive errors affect both eyes and his history of pseudopapilledema, which is an “anomalous elevation of the optic disk,” resolved. See Dorland’s Illustrated Medical Dictionary 1545 (32d ed. 2012). Based on the foregoing facts, a separate rating for an eye disorder is not warranted.
In reaching the above conclusions, the Board has considered the applicability of the benefit of the doubt doctrine; however, as the preponderance of the evidence is against the Veteran’s claim for a higher rating than that assigned, that doctrine is not applicable. See 38 U.S.C. § 5107(b); 38 C.F.R. § 3.102.

2. Entitlement to an effective date earlier than October 20, 2016, for the award of a TDIU due to service-connected disabilities
The Veteran contends that an effective date earlier than October 20, 2016, is warranted for the award of a TDIU. 
Total disability ratings for compensation may be assigned, where the schedular rating is less than total, when the disabled person is, in the judgment of the rating agency, unable to secure or follow a substantially gainful occupation as a result of service-connected disabilities; provided that, if there is only one such disability, this disability shall be ratable as 60 percent or more, and if there are two or more disabilities, there shall be at least one disability ratable at 40 percent or more, and sufficient additional disability to bring the combined rating to 70 percent or more. 38 C.F.R. § 4.16(a); see also 38 C.F.R. §§ 3.340, 3.341. For the purpose of one 60 percent disability, disabilities resulting from common etiology or a single accident, or disabilities affecting a single body system will be considered as one disability. 38 C.F.R. § 4.16(a)(2), (3).
Where these percentage requirements are not met, entitlement to benefits on an extraschedular basis may be considered when a veteran is unable to secure and follow a substantially gainful occupation by reason of service-connected disabilities, and consideration is given to the veteran’s background, including his employment and educational history. 38 C.F.R. § 4.16(b).
The effective date of an award is generally the date of claim, or the date entitlement arose, whichever is later. 38 U.S.C. § 5110(a); 38 C.F.R. § 3.400. A TDIU claim is a claim for increased compensation; thus, the effective date rules for increased compensation apply to a TDIU claim. Hurd v. West, 13 Vet. App. 449 (2000).
Three possible effective dates may be assigned for the grant of an increased rating, including a TDIU, depending on the facts of the case. First, if an increase in disability occurs after the claim is filed, the effective date is the date that the increase is shown to have occurred, i.e., the date entitlement arose. 38 C.F.R. § 3.400(o)(1). Second, if an increase in disability precedes the claim by a year or less, the effective date is the date that the increase is shown to have occurred, i.e., the date the increase is factually ascertainable. 38 C.F.R. § 3.400(o)(2). Third, if the increase in disability precedes the claim by more than a year, the effective date is the date that the claim is received. 38 C.F.R. § 3.400(o)(2). To determination the proper effective date, the Board must review all the evidence of record. Hazan v. Gober, 10 Vet. App. 511, 521 (1997); VAOGCPREC 12-98 (1998).
Turning to the evidence, the Veteran was discharged from military service in January 2007 following a Medical Evaluation Board, which determined he was unfit for duty due to neuralgia with chronic right-sided jaw pain following an August 2005 right lower wisdom tooth extraction in which a nerve was transected. His service treatment records indicate that his migraine headache disability also began after the August 2005 nerve injury. 
A December 2009 VA treatment note reflects the Veteran’s report that his right facial pain and migraine headaches rendered him unable to work, adding that he had to stop taking college courses. He made similar statements during a January 2010 VA fee-basis examination to evaluate his trigeminal nerve and migraine headache disabilities. Consistent with the Veteran’s statements, a September 2011 VA neurological examination report also documents the examiner’s belief that the Veteran’s trigeminal neuralgia and migraine headache disabilities prevented him from being able to work.
In the current appeal, the Veteran’s claim for an increased rating for neuralgia of the right fifth (trigeminal) cranial nerve was received on October 20, 2016. At the time his increased rating claim was received, service connection had been in effect for migraine headaches (rated 50 percent disabling), right facial neuralgia (rated 10 percent disabling), hypochromic borderline normocytic anemia (rated 0 percent disabling), and right cervical lymphadenopathy (rated 0 percent disabling). His combined evaluation for compensation was 60 percent. Therefore, because the Veteran’s migraine headache and right facial neuralgia disabilities appear to have had a common etiology (nerve damage during wisdom tooth extraction) and because these disabilities both affect the nervous system, the threshold schedular criteria for a TDIU were satisfied at that time. In a November 2017 rating decision, the AOJ increased the assigned rating for the right fifth cranial nerve neuralgia to 30 percent, effective October 20, 2016. Thus, the Veteran continued to meet the threshold schedular criteria for a TDIU on that date.
Regarding the date of the Veteran’s TDIU claim, VA received his application for a TDIU on April 14, 2017 after submitting an “Intent to File a Claim for Compensation” (VA Form 21-0966) earlier that month. However, since his October 20, 2016 claim for an increased rating for right facial neuralgia was a claim seeking the highest rating possible and since there was evidence at the time of the October 20, 2016 claim that the Veteran was unemployable, his April 2017 TDIU claim was considered part and parcel of his appeal for an increased rating for right facial neuralgia. Rice v. Shinseki, 22 Vet. App. 477 (2009). Applying the facts in this case to the applicable law and regulations, the Board finds the AOJ assigned the correct effective date of October 20, 2016 for the award of a TDIU because the evidence of record shows evidence of unemployability due to service-connected right trigeminal neuralgia (and service-connected migraine headaches) preceded the claim for a TDIU by more than a year. 38 C.F.R. § 3.400(o)(2).
The Board acknowledges the April 2017 correspondence from the Veteran’s attorney in which he noted that the schedular criteria for a TDIU were previously satisfied based on service-connected “nerve damage and migraines,” which share a common etiology and affect a single body system. He asserted that in deciding the Veteran’s “last claim, the [regional office (RO)] made no mention of the fact that [he] is unemployed due to this service-connected disabilities [sic].” The attorney observed that a TDIU claim had been raised by the record, but the RO implicitly denied the claim. 
Citing the Veteran’s prior statements to VA medical personnel, the attorney further asserted in December 2017 correspondence that a TDIU was raised by the record in a December 2009 VA treatment note and during January 2010 and September 2011 VA examinations, which evaluated the severity of his migraine headache and right facial neuralgia disabilities. He asserted that VA failed to adjudicate the issue or send an application for a TDIU to the Veteran, and that a December 2009 effective date is warranted for the award of a TDIU as a result.
It is unclear to the Board which “last decision” the Veteran’s attorney is referencing regarding his observation that the RO implicitly denied a claim for a TDIU that was reasonably raised by the record. The Board reiterates that a July 2012 rating decision increased the disability rating for migraine headaches to 50 percent effective March 8, 2011, bringing the combined evaluation for compensation to 60 percent since that date. As noted, his facial neuralgia and migraine headaches appear to have been caused by the August 2005 damage to his right fifth cranial nerve during a tooth extraction and both disabilities affect the same body system. Therefore, the threshold schedular criteria for consideration of a TDIU are met effective March 8, 2011. However, to the extent that a TDIU had been raised by the record, the Veteran’s attorney accurately points out that any such claim for a TDIU was implicitly denied (in the July 2012 and September 2014 rating decisions).
“The ‘implicit denial’ rule provides that, in certain circumstances, a claim for benefits will be deemed to have been denied, and thus finally adjudicated, even if [VA] did not expressly address that claim in its decision.” Adams v. Shinseki, 568 F.3d 956, 961 (Fed. Cir. 2009). “The implicit denial rule is, at bottom, a notice provision.” Id. at 965. Significantly, the United States Court of Appeals for Veterans Claims (Court) has noted that “[i]t is reasonable to say that an appellant who receives a disability rating that is less than 100 [percent] has notice of how his conditions have been rated and has the opportunity to appeal the rating decision. Even if he does not have a clear understanding of TDIU, he does have a clear statement of which disability is being rated and the fact that [VA] has declared it to be less than 100 [percent] disabling.” Ingram v. Nicholson, 21 Vet. App. 232, 238 (2007); Locklear v. Shinseki, 24 Vet. App. 311, 316 (2011).
Furthermore, the Court has set forth four factors that are to be taken into consideration when applying the implicit denial rule: (1) relatedness of claims; (2) specificity of adjudication; (3) timing of claims; and (4) representation. Cogburn v. Shinseki, 24 Vet. App. 205, 212-13 (2010).
Regarding the first factor, the decision in Locklear held that a TDIU claim is not implicitly denied if the increased rating and TDIU claims are explicitly bifurcated into separate adjudications. In Locklear, the Court held that once a claimant sees “a part of a claim broken out for separate adjudication, a reasonable person would expect to see a specific decision on the part that was separated, or at least some specific indication that the separated part was adjudicated.” 24 Vet. App. at 316. That is not the situation in the Veteran’s case as the RO did not bifurcate his claims prior to or in its July 2012 or September 2014 rating decisions. Therefore, since a TDIU claim is part and parcel of an increased rating claim, the TDIU claim was clearly related to the Veteran’s increased rating claims. 
For the second factor, the July 2012 rating decision increased the assigned rating for migraine headaches to 50 percent and the September 2014 rating decision continued the previously assigned ratings for migraine headaches, right facial neuralgia, and anemia. Based on the evidence of record, higher ratings for the Veteran’s disabilities were not warranted. Notably, in awarding the highest, 50 percent rating available for migraine headaches, which requires symptoms that are “productive of severe economic inadaptability,” the RO considered the evidence, to include his employment status, and determined that his headaches either produced, or were capable of producing, severe economic inadaptability, but did not find that his headaches precluded him from obtaining or retaining employment consistent with his (military) occupational history and education, including some college courses. Therefore, the Board finds that the July 2012 adjudication in particular addressed any claim raised by the record for a TDIU in such a way that a reasonable person could infer that the claim was denied on all possible theories of entitlement. 
For the third factor, a TDIU claim was reasonably raised by the record based on the January 2010 and September 2011 VA examination reports, which document the Veteran’s assertions during the former examination and the examiner’s assessment during the latter examination that the Veteran’s migraine headache and trigeminal neuralgia disabilities rendered him unable to work. Because these examinations occurred contemporaneously with his March 2011 claim for an increased rating for migraine headaches, the timing of the claims is closely related.
Regarding the fourth factor, at the time of the June 2012 and September 2014 rating decisions, the Veteran was not represented by an attorney or a Veterans Service Organization (VSO). VA is required to read filings liberally when a claimant is either pro se or represented by a VSO. Roberson v. Principi, 251 F.3d 1378 (Fed. Cir. 2001). Even accounting for the Veteran’s lack of representation in July 2012 and September 2014, and reading the filings liberally, the Board finds that aggregate consideration of the four Cogburn factors weigh in favor of finding that the July 2012 and September 2014 rating decisions implicitly denied a claim of entitlement to TDIU. 
Accordingly, even if the Veteran did not have a clear understanding of TDIU, one could reasonably argue that in receiving ratings for his service-connected disabilities that were less than 100 percent, he had notice of how his disabilities had been rated and had the opportunity to appeal the rating decisions. Moreover, a veteran’s ignorance of a particular reason for the denial of a total disability rating does not preclude him from understanding that an appealable decision has been made concerning his claim. See Ingram, 21 Vet. App. at 248.
As noted above, the Veteran did not appeal the July 2012 or September 2014 rating decisions and did not submit any new and material evidence within one year of the decisions. Thus, the July 2012 and September 2014 rating decisions are final and the January 2010 and September 2011 examination reports that raised the issue of entitlement to a TDIU cannot serve to establish an earlier effective date for the assignment of a TDIU. See Rudd v. Nicholson, 20 Vet. App. 296, 300 (2006) (holding that a freestanding claim for an earlier effective date is improper and may not be adjudicated because such would vitiate the rule of finality); 38 C.F.R. § 3.156(b).
Finally, the Board also acknowledges the December 2017 assertion by the Veteran’s attorney that an effective date of October 20, 2015 is warranted for the award of a TDIU under 38 U.S.C. § 5110(b)(3) because “[i]t is undisputed that [the Veteran’s] claim was for an increase of his already service-connected right face nerve and migraine headaches.” However, because the Board has found in the decision herein that an increase in severity of service-connected neuralgia of the right fifth cranial nerve was not shown to have occurred within the one-year look-back period prior to receipt of the October 20, 2016 increased rating claim, it follows that an effective date earlier than October 20, 2016 for a TDIU, which is part-and-parcel of the increased rating claim, is not warranted. 38 C.F.R. § 3.400(o)(2). Regarding the assertion that the issue of an increased rating for migraine headaches was also on appeal, the Board notes this is factually incorrect. In fact, the July 2012 rating decision increased the rating for migraine headaches to 50 percent, which is the highest schedular rating available for that disability, effective March 8, 2011. 
 
In summary, the earliest possible date for the award of a TDIU is October 20, 2016, and an earlier effective date is not warranted. As a matter of law, the Veteran is not entitled to an effective date prior to October 20, 2016 for the assignment of a TDIU. Sabonis v. Brown, 6 Vet. App. 4226 (1994). 
 
K. Conner
Veterans Law Judge
Board of Veterans’ Appeals
ATTORNEY FOR THE BOARD L. Kirscher Strauss, Counsel