# United States Court of Appeals for the Federal Circuit

---

**KEVIN STEELE,**
*Claimant-Appellant*

**v.**

**DOUGLAS A. COLLINS, SECRETARY OF VETERANS AFFAIRS,**
*Respondent-Appellee*

---

2023-2049

---

Appeal from the United States Court of Appeals for Veterans Claims in No. 22-32, Judge Scott Laurer.

---

Decided: May 1, 2025

---

KENNETH M. CARPENTER, Carpenter Chartered, Topeka, KS, argued for claimant-appellant.

ALBERT S. IAROSSI, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for respondent-appellee. Also represented by BRIAN M. BOYNTON, ERIC P. BRUSKIN, PATRICIA M. MCCARTHY; EVAN SCOTT GRANT, BRIAN D. GRIFFIN, Office of General Counsel, United States Department of Veterans Affairs, Washington, DC.

---

Before PROST, LINN, and REYNA, *Circuit Judges.*

LINN, *Circuit Judge.*

Veteran Kevin Steele appeals the decision by the United States Court of Appeals for Veterans Claims ("Veterans Court"), affirming the decision by the Board of Veterans Appeals ("Board") awarding an effective date no earlier than March 6, 2013, for service connected headaches. Because neither the Board nor the Veterans Court legally erred by holding that Steele's 1991 claim for headaches was implicitly denied and therefore finally adjudicated in 1991, we affirm.

## BACKGROUND

Kevin Steele is an honorably discharged non-combat Marine veteran who served from 1978–1979 and 1980–1982. On June 13, 1991, Steele filed an original claim for, inter alia, a "head injury" that he attributed to a 1980 training incident. Soon after the incident, the Department of Veterans Affairs ("DVA") Examiner reported:

> In July, 1980 the patient, while [] on a military ship, injured his head. While doing a drill, he hit his head against a metal pipe under the cabin on the ship. He became dazed momentarily but he did not completely lose consciousness and he had a 2 inch gash on the frontal area of the skull which was sutured. *The only residual he has because of this head injury, are occasional headaches but they are not disabling.*

J. App'x at 21 ("1991 Examination") (emphasis added). The VA Regional Office ("RO") reviewed Steele's medical history noting that he "was seen on July 17, 1980 after sustaining trauma to his head with loss of consciousness," and that in 1990 he "had some complaints of a headache" but that "[t]here were no further complaints of headaches during service." J. App'x at 23–24 ("1991 RO Decision"). The RO further noted the "puncture scar of the frontal scalp,"

and that "[t]he veteran claimed only occasional headaches as a residual but these were not disabling." *Id.* at 24. The RO concluded that "[s]ervice connection is granted for the scar of the scalp as the only residual of the head injury in service, the scar of the left abdomen, and the scar of the right elbow. However, these scars are not considered to be disabling and noncompensable evaluations are assigned." *Id.*

On September 12, 1991, the RO sent Steele a notification letter, denying his claim for disability benefits. J. App'x at 25 ("1991 Notice Letter"). The letter noted three sets of "SCARS" that were service connected, but "less than 10% disabling," and concluded that: "SERVICE-CONNECTION IS GRANTED FOR YOUR SCALP SCAR AS THE ONLY RESIDUAL OF YOUR HEAD INJURY IN SERVICE." *Id.* at 25–26 (capitalization in original). Steele did not appeal the RO's decision.

On March 6, 2013, over 20 years later, Steele filed a claim for service connection for memory loss, shaking hands, depression, and fatigue. The Board eventually held that this claim should have been construed to include a claim for traumatic brain injury ("TBI"), and Steele was awarded a 50% disability rating with a March 6, 2013 effective date. J. App'x at 167.

Three years later, on October 10, 2016, Steele filed a claim for service connection for headaches. J. App'x at 96. In January 2017, the RO granted service connection for headaches effective October 14, 2015—the date of receipt of the intent to file—and assigned a 50 percent disability rating. J. App'x at 28–33, 96. Eventually, the Board assigned an effective date "no earlier than the date of his residuals of TBI reopening petition, which is March 6, 2013." J. App'x at 168.

Steele appealed again, and, during the pendency of his appeal at the Veterans Court, joined with the government in filing a Joint Motion for Remand seeking to adjudicate

whether his 1991 claim for service connected headaches remained open and thus entitled him to an earlier effective date, or, if closed, should be reopened due to clear and unmistakable error ("CUE").[1]

On September 7, 2021, the Board issued the decision on appeal here, denying an effective date before March 6, 2013, for headaches and all residuals of TBI. J. App'x at 191–98 ("September 2021 Decision"). Rejecting Steele's argument that his 1991 claim for headaches remained open because it was not finally adjudicated, the Board held that the 1991 RO Decision "at the very least, implicitly denied" Steele's claim for service connected headaches. J. Appx. at 195. In making that determination, the Board asked, "whether it would be clear to a reasonable person that VA's action that expressly refers to one claim is intended to dispose of others as well," *id.* (citing *Adams v. Shinseki*, 568 F.3d 956 (Fed. Cir. 2009)), and answered that a reasonable person would have understood that Steele's claim for headaches was denied in the 1991 RO Decision denying compensable service connection for head injury, *see id.* at 196–97.

Steele appealed to the Veterans Court, arguing that the Board's implicit denial in the August 1991 Decision violated the notice requirements of 38 C.F.R. § 3.103(e) (1991) under this Court's decision in *Ruel v. Wilkie*, 918 F.3d 939 (Fed. Cir. 2019). The Veterans Court held that the Board properly considered the *Cogburn* factors to determine whether a Veteran was put on notice of the implicitly denied claim, and that Steele had failed to raise the notice argument based on *Ruel* in the previous rounds of appeals to the Board or the Veterans Court. J. App'x at 5–6; *see Cogburn v. Shinseki*, 24 Vet. App. 205 (2010)

---

[1]    The CUE claim took a different procedural route not relevant here.

(surveying four factors for determining whether a claim was implicitly denied).

Steele appeals.

## DISCUSSION

### I

We have jurisdiction to review the legal bases for the Veterans Court's decision under 38 U.S.C. § 7292(a), (c), but our jurisdiction is tightly circumscribed by statute. We may not review the Veterans Court's factual determinations or applications of law to fact. 38 U.S.C. § 7292(d)(2). We may only review the Veterans Court's interpretation of a rule of law or statute or regulation "that was relied on by the [Veterans] Court," § 7292(a), or issues that raise Constitutional concerns. *Prenzler v. Derwinski*, 928 F.2d 392, 393 (Fed. Cir. 1991).

### II

### A

Ordinarily, a VA decision denying benefits must expressly identify the particular claim being denied, expressly state the reasons for the denial, and expressly provide notice of the right to appeal that claim. *See* 38 C.F.R. § 3.103(f) (1991).[2] That provision states:

> (f) **Notification of decisions**. The claimant or beneficiary will be notified in writing of decisions affecting the payment of benefits . . . .

---

[2] We apply the version of the regulation in place when the allegedly deficient 1991 Notice Letter and 1991 RO Decision were issued. Both parties apply this version in their arguments.

> **Notice will include the reason for the decision** and the date it will be effective as well as the right to a hearing.
>
> The notification will also advise the claimant or beneficiary of the right to initiate an appeal.

*Id.* (emphases added). Analyzing the substantively identical 1984 version of § 3.103,[3] we held:

> [A]s a matter of law, to meet the notice requirements of § 3.103(e), an explicit denial must state, or clearly identify in some manner, the claim(s) being denied.[FN]  The decision must also meet the other requirements of § 3.103(e), **including the reason for the decision**, the date effectuated, and notice of appellate rights.

*Ruel*, 918 F.3d at 942 (emphasis added). In the footnote, we noted: "Our holding is limited to explicit denials, since that is what the Veterans Court determined occurred here." *Id.* at 942 n.3. This provision "mirrors constitutional due process by requiring notice that a claim has been denied." *Id.*

If the VA "fail[s] to notify the claimant of the denial of his claim or of his right to appeal an adverse decision," that claim will be "considered to be pending," rather than finally adjudicated. *Adams*, 568 F.3d at 960 (citing *Cook v. Principi*, 318 F.3d 1334, 1340 (Fed. Cir. 2002) (en banc) (superseded by statute on other grounds)). Such a pending claim holds open the first filing date as a reference point for the earliest effective date for later-filed claims. *Id.* ("If a claim is left pending, it can be addressed when a subsequent claim for the same disability is adjudicated by the [VA], in

---

3    *Ruel* analyzed 38 C.F.R. § 3.103(e) (1984), which was renumbered to 38 C.F.R. § 3.103(f) in the 1991 version.

which case the effective date or any award of benefits will be the effective date applicable to the original claim").

## B

Since at least our decision in *Deshotel v. Nicholson*, 457 F.3d 1258 (Fed. Cir. 2006), this Court has recognized that the reasons provided for an explicit denial with respect to one particular claim, may constitute an *implicit* denial of another (related) claim, "even if the [VA] did not expressly address that [related] claim in its decision," *Adams*, 568 F.3d at 961.[4]  The condition precedent for the application of this doctrine is that:

> [The] regional office decision "discusses a claim in terms sufficient to put the claimant on notice that it was being considered and rejected . . . even if the formal adjudicative language does not specifically deny that claim."

*Adams*, 568 F.3d at 962–63 (quoting with approval *Adams v. Peake*, No. 06-0095, slip op. at 5, 2008 WL 2128085 (Vet. App. Feb. 20, 2008)) (internal quote in Veterans Court decision omitted).  We also stated:

> The key question in the implicit denial inquiry is whether it would be clear to a reasonable person that the [VA's] action that expressly refers to one claim is intended to dispose of others as well.

*Id.* at 964; *see also id.* ("[T]he implicit denial rule applies where a regional office's decision provides a veteran with reasonable notice that his claim for benefits was denied."). When this condition precedent is met, the discussion of the explicit denial is deemed to provide "adequate notice of, and an opportunity to respond to, the regional office's decision" on the related claim.  *Id.* at 965; *see also Cogburn v.*

---

[4]    We refer to the implicitly denied claim as the "related" claim throughout this opinion.

*McDonald*, 809 F.3d 1232, 1236 (Fed. Cir. 2016) ("[W]hen the implicit denial rule applies, the claimant necessarily 'received adequate notice of, and an opportunity to respond to, the [VA's] decision.'").

Because notice is deemed sufficient, the related claims are "deemed to have been denied, and thus finally adjudicated," closing off the veteran's earlier claim filing date. *Adams*, 568 F.3d at 961.

## III

### A

Steele argues that the Board and the Veterans Court legally erred here by not requiring the VA to satisfy its notice obligation under § 3.103(f), specifically, by not requiring the VA to "include the reasons for the decision" implicitly denying benefits for headaches in its 1991 Notice Letter. Appellant's Br. at 8. Relying largely on our holding in *Ruel*, 918 F.3d at 942, Steele argues that a claim may not be implicitly denied unless the RO notice letter satisfies all the requirements of § 3.103(f) not just for the explicitly denied claim, but also for the implicitly denied claim.

Steele appears to acknowledge that an explicit denial may provide notice *of the fact that* a related claim is being denied, but argues that our implicit denial precedents do not extend that imputation of knowledge to the *reasons* for the denial, which must be expressly stated in the notice to satisfy § 3.103(f). *See* Oral Argument at 33:05–33:52, available at https://oralarguments.cafc.uscourts.gov/default.aspx?fl=23-2049_03072025.mp3 ("The implicit denial rule is about the knowledge imputed to the veteran of *what* was denied, not *why* [it] was denied.").

He argues that the RO's failure to satisfy § 3.103 prevented that decision from finally adjudicating his headache claim, and that he is therefore entitled to an effective date of June 13, 1991 for service connected headaches. *See* 38 C.F.R. § 3.400. Steele thus asks this court to instruct the

Veterans Court to remand to the Board to reconsider an effective date earlier than March 6, 2013, for service connected headaches.

The government responds that satisfying the prerequisites for implicit denial also satisfies Constitutional and regulatory notice requirements. *See Cogburn*, 809 F.3d at 1236 ("[T]he application of the implicit denial rule does not violate [a claimant's] right to receive notice pursuant to the VA's due process regulation."); *Adams*, 568 F.3d at 964–65 (rejecting claimant's argument that the implicit denial rule violated due process rights to receive notice of the RO decision because "the implicit denial rule is, at bottom, a notice provision"). During oral argument, the government also argued that the VA need not expressly state the reasons underlying an implicit denial because: (1) it would effectively eliminate implicit denials by requiring that every denial be expressly justified; and (2) consideration of the factors in *Cogburn v. Shinseki*, 24 Vet. App. 205, 212-13 (2010), *aff'd on different grounds by Cogburn*, 809 F.3d 1232, protects claimants' rights to receive notice about the reasons for the implicit denial. *See* Oral Argument at 24:50-25:25; 27:40-28:05. The government adds that Steele's reliance on *Ruel* is misplaced because that case is expressly limited to express denials. *Ruel*, 918 F.3d at 942 n. 3.

We do not find Steele's argument persuasive and agree, at least in part, with the government. First, an implicit denial does not exist in a vacuum. Rather, by its very nature, every implicit denial of a claim rests on the VA's explanations and findings made in support of an explicit decision on another claim. *See Adams*, 568 F.3d at 961. The reasonable notice of the implicit denial arises from the reasons given for the explicit decision. *Id.* at 962–63. The reasonable notice of the implicit denial may also arise from a favorable VA adjudication. *See, e.g.*, *Deshotel*, 457 F.3d 1258 (Fed. Cir. 2006) (explicit grant of service-connected disability for head trauma nevertheless implicitly denied a

claim for a psychiatric condition where the RO noted the VA examination's judgment of no psychiatric symptoms).

It is well settled that the Board's underlying explicit determination must include "the reason for the decision" to satisfy the notice regulation in § 3.103. 38 C.F.R. § 3.103(f) (1991); *Ruel*, 918 F.3d at 942 (an explicitly denied claim must "state, or clearly identify in some manner, the claim(s) being denied . . . [and] the reason for the decision."). To support the legal conclusion that a related claim was implicitly considered and adjudicated, that same reason must be "sufficient to put the claimant on notice that [the related claim] was being considered and rejected." *Adams*, 568 F.3d at 962–63. One typical way this occurs is that the reasons for the explicit denial include a holding or finding that would be inconsistent with the granting of benefits for the related claim.

Such was the case in *Adams*. In denying a 1951 claim for disability compensation for "rheumatic heart," the Board found that "medical records do not disclose active rheumatic fever *or other active cardiac pathology during service*." *Adams*, 568 F.3d at 959 (emphasis in original). When Adams sought to reopen his claim in 1989, asserting a claim for endocarditis (a related heart condition), we affirmed the Board's implicit denial analysis, noting that the 1952 rejection of any "other active cardiac pathology" "reasonably informed" Adams that a claim "for any heart condition, including endocarditis, was denied." *Id.* at 963 (quoting Board's finding and Veterans Court's decision). The finding of no "other active cardiac pathology" was inconsistent with an award for benefits for rheumatic heart.

Similarly, in *Deshotel v. Nicholson*, 457 F.3d 1258 (Fed. Cir. 2006), Veteran Deshotel filed a claim for compensation for service connected residuals of a head injury, which the RO granted in a decision in which it found that his physical examination showed no evidence of a psychiatric condition. *Id.* at 1259–60. We affirmed the Board's implicit denial

determination for service connected psychiatric condition, *id.* at 1262, later noting that "[u]nder those circumstances, a reasonable veteran would have known that his claim for disability compensation for a psychiatric condition was denied." *Adams*, 568 F.3d at 63 (discussing *Deshotel*). This makes sense. Having no psychiatric condition at the time of the original decision was inconsistent with an award for benefits of a psychiatric condition.

The *Adams* court drew a strong contrast between these two cases and the situation addressed by the Veterans Court in *Ingram v. Nicholson*, 21 Vet. App. 232 (2007). In *Ingram*, Veteran Ingram filed a claim for non-service connected pension benefits after his lung was removed at a VA hospital, a claim that was compensable only by showing permanent unemployability. The VA denied this claim because he failed to show that his unemployability was *permanent. Id.* at 235. Ingram later filed a claim for benefits under 38 U.S.C. § 1151, seeking benefits for an esophageal leak caused by the VA's medical care in performing the lung removal. *Id.* The Board awarded him compensation under § 1151, which did *not* require permanent unemployability. In reviewing the effective date, the Veterans Court explained that the VA's earlier decision denying compensation for permanent unemployability did *not* implicitly deny Ingram's claim under § 1151 because "each claim stands alone and is not contingent on any action (favorable or unfavorable) by the RO on the other claim." *Id.* at 247. The Veterans Court noted that the elements of the two claims were "entirely different," and commented that "when Mr. Ingram was informed that his claim for pension benefits was denied because his condition was 'not established as permanent,' he had no reason to know" how (or whether) his § 1151 claim was decided. *Id.* As we summarized in *Adams*, "the regional office's explanation of its rejection of Mr. Ingram's non-service connection claim for pension benefits did not give Mr. Ingram reasonable notice that it was also rejecting his claim for disability compensation under

section 1151." *Adams*, 568 F.3d at 962. This was because the original denial was based on a finding of no permanent unemployability—a finding that had no bearing on Ingram's eligibility for compensation under § 1151.

Although the reasons given for the explicit VA action must be stated and reasonably support the implicit denial, as described above, the VA need not expressly connect the dots between the stated explanation and the implicitly denied claim. Such a requirement would leave no room for the implicit denial doctrine. *Adams*, 568 F.3d at 961 ("The 'implicit denial' rule provides that, in certain circumstances, a claim for benefits will be deemed to have been denied, and thus finally adjudicated, *even if the DVA did not expressly address that claim in its decision.*" (emphasis added)). It makes little sense to require an express statement of reasons separately addressing a claim that is not itself explicitly discussed. Rather, the veteran receives sufficient notice of both the fact of the implicit denial and the reasons therefore when the stated reasons for the explicitly decided claim would reasonably be understood to also extend to the implicitly denied claim.

To that extent, "the application of the implicit denial rule does not violate [a claimant's] right to receive notice pursuant to the VA's due process regulation," *Cogburn*, 809 F.3d at 1236 (discussing an earlier but identical version of the notice provision at § 3.103 that also included the requirement of providing the reasons for the decision).

## B

Here, the September 2021 Board decision correctly analyzed notice to Steele of the implicit rejection of his headache claim by asking whether the explicit denial of his claim for head injury in the 1991 RO Decision and the 1991

Notice Letter[5] provided Steele with "reasonable notice that his claim for benefits [for service connected headaches] was denied." J. App'x at 195. To answer this question, the Board considered the reasons stated for the explicit denial of Steele's head injury claim and how they applied to the implicitly denied claim in analyzing the four non-exclusive "*Cogburn* factors." *Id.* (applying *Cogburn v. Shinseki*, 24 Vet. App. 205 (2010)).

Considering these factors, the Board held that "the [1991] adjudication alluded to the headaches 'claim' in such a way that it could be reasonably inferred that the claim was denied," because Steele had sufficient notice, noting that: the explicitly denied claim for brain injury and headaches were "closely related"; that the 1991 Examination "noted the headaches as a residual of the brain injury, but considered them not disabling"; and that the 1991 RO Decision found that scars were the "**only** residual of the head injury in service." J. App'x at 196–97 (emphasis in original). The Veterans Court affirmed. We see no legal error in this analysis or the Board's findings or the Veterans Court's affirmance.

While one might question whether the terse statement of the reason for the explicit denial here was sufficient to satisfy the implicit denial standard set forth above, that is a question of fact beyond our jurisdiction to address. What we can say is that the stated reason was not so devoid of meaning as to be insufficient to support the implicit denial

---

5    At oral argument, Steele argued that our analysis should be restricted to the 1991 Notice Letter and exclude the 1991 RO Decision. *See* Oral Argument at 15:02–15:23. Steele cites no support for the proposition that the explanation in an RO decision itself cannot provide the reasons for an implicit denial. We see no reason for the exclusion, and Steele has forfeited this argument by not making it in his opening brief.

as a matter of law, and the Board did not fail to consider the correct standard for implicit denial.

To the extent Steele argues that the denial of his headache claim here was *explicit, see* Oral Argument at 14:33–15:01, that argument is contrary to: (1) Steele's own argument that his claim for service connection for headaches was not adjudicated in 1991, J. App'x at 193 (Board's September 2021 Decision summarizing Steele's arguments); and (2) the Board's finding of fact that the 1991 decision "*implicitly* denied service connection for headaches," J. App'x at 191. Further, Steele forfeited this argument by failing to present it anywhere in his opening brief to this court.

### CONCLUSION

For the foregoing reasons, we affirm.

### AFFIRMED