# United States Court of Appeals for the Federal Circuit

---

**DAVID A. HAMILL,**
*Claimant-Appellant*

**v.**

**DOUGLAS A. COLLINS, SECRETARY OF VETERANS AFFAIRS,**
*Respondent-Appellee*

---

2024-1543

---

Appeal from the United States Court of Appeals for Veterans Claims in No. 22-7344, Judge Joseph L. Toth, Judge Scott Laurer, Judge Grant Jaquith.

---

Decided: February 4, 2026

---

RENEE A. BURBANK, National Veterans Legal Services Program, Arlington, VA, argued for claimant-appellant. Also represented by RYAN KELLEY, BARTON FRANK STICHMAN, I; YELENA DUTERTE, Veterans Legal Clinic, University of Illinois Chicago School of Law, Chicago, IL.

GALINA I. FOMENKOVA, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for respondent-appellee. Also represented by BRIAN M. BOYNTON, ELIZABETH MARIE HOSFORD, PATRICIA M. MCCARTHY; BRIAN D. GRIFFIN, JONATHAN

KRISCH, Office of General Counsel, United States Department of Veterans Affairs, Washington, DC.

————————————

Before MOORE, *Chief Judge*, CHEN and STARK, *Circuit Judges*.

MOORE, *Chief Judge*.

David Hamill appeals an order of the Court of Appeals for Veterans Claims (Veterans Court) (1) dismissing his petition for extraordinary relief in the nature of a writ of mandamus to compel the Department of Veterans Affairs (VA) to adjudicate his claim for a character of discharge determination, and (2) denying his request for class certification and class action (RCA). For the following reasons, we vacate the Veterans Court's order and remand for further proceedings consistent with this opinion.

## BACKGROUND

Mr. Hamill served in the United States Marine Corps from 2009 through 2013 and was discharged from service under "Other Than Honorable" conditions. J.A. 26. Upon discharge, Mr. Hamill sought disability compensation for post-traumatic stress disorder (PTSD), other psychiatric issues, and back pain. J.A. 28. In 2014, the VA denied his application because his Other Than Honorable discharge barred "all benefits administered by the [VA] under . . . 38 C.F.R. [§] 3.12(c)(6) and 38 U.S.C. [§] 5303(a)." J.A. 36–38. The VA noted, however, that Mr. Hamill was still "entitled to health care under Chapter 17 of Title 38, U.S.C. for any disabilities determined to be service connected." *Id.* at 36. Mr. Hamill did not appeal. Appellant Br. 5.

In 2017, Mr. Hamill filed a new claim for disability benefits based on PTSD and back pain again, along with other conditions. J.A. 39–43. The VA construed the claim as an implicit attempt to reopen his 2014 character of discharge

determination and explicitly denied it.  J.A. 45–48; Gov't Br. 6.  Again, Mr. Hamill did not appeal.  Appellant Br. 5.

In 2021, Mr. Hamill filed (1) another claim seeking compensation for the same disabilities in his 2017 filing and (2) a new claim for several other disabilities. J.A. 49–50; J.A. 51–55.  The Government does not dispute "Mr. Hamill implicitly sought to reopen the prior character-of-discharge determination that otherwise precluded payment of veterans compensation."  Gov't Br. 7.  Without mentioning his pending claim for a change in the character of his discharge determination, the VA granted service connection for PTSD and denied service connection for the rest of the claimed disabilities.  J.A. 56–65.

In 2022, Mr. Hamill's attorney sent a letter asking the VA to "make a decision regarding [Mr. Hamill's] discharge characterization" because it failed to do so in its 2021 decision, leaving him with no appealable decision.  J.A. 66.  In response, the VA told Mr. Hamill he should contact the Service Department to change his character of discharge or apply for a correction of military records.  J.A. 67–75. Mr. Hamill then petitioned the Veterans Court for a writ of mandamus to compel the VA to adjudicate his character of discharge claim.  J.A. 91–100.  In March 2023, the Secretary moved to dismiss the petition as moot based on a February 2023 letter the VA sent Mr. Hamill explicitly finding he had not submitted new and material evidence to warrant reopening the VA's 2014 character of discharge decision.  J.A. 3.  On the same day, Mr. Hamill filed a request for class certification and class action (RCA).  J.A. 108–36. The RCA acknowledged the February 2023 letter satisfied his request for an appealable character of discharge decision but argued his petition was not moot because certain mootness exceptions applied.  J.A. 117–18.

A divided panel of the Veterans Court dismissed Mr. Hamill's case because it concluded his petition was moot and no exception applied.  J.A. 4–9.  Central to its

conclusion was the majority's determination that Mr. Hamill's request to reopen the VA's 2014 character of discharge determination was implicitly denied by the VA's 2021 service connection decision (i.e., before Mr. Hamill filed his mandamus petition). *Id.* The dissent disagreed that the implicit denial doctrine was applicable and would have held Mr. Hamill's petition was not moot. J.A. 11–19. Mr. Hamill appeals.[1] We have jurisdiction under 38 U.S.C. §§ 7292(a), (c).

## DISCUSSION

Our jurisdiction to review a decision of the Veterans Court is limited by statute. *Goodman v. Shulkin*, 870 F.3d 1383, 1385 (Fed. Cir. 2017). We may "review and decide any challenge to the validity of any statute or regulation or any interpretation thereof . . . and . . . interpret constitutional and statutory provisions, to the extent presented and necessary to a decision." 38 U.S.C. § 7292(c). "Except to the extent that a constitutional issue is presented, [we] may not review 'a challenge to a factual determination,' or 'a challenge to a law or regulation as applied to the facts of a particular case.'" *Goodman*, 870 F.3d at 1385 (quoting 38 U.S.C. § 7292(d)(2)(A)–(B)). We review the Veterans Court's legal conclusions de novo. *Id.*

On appeal, Mr. Hamill argues the Veterans Court legally erred by applying the implicit denial doctrine to determine his petition was mooted by the VA's 2021 decision, which is subject to the Veterans Appeals Improvement and Modernization Act of 2017, Pub. L. No. 115-55, 131 Stat. 1105—commonly referred to as the "Appeals Modernization Act" (AMA). J.A. 56–65. In particular, he argues

---

[1] In addition to the parties' briefs, we received amicus briefs from the Veterans of Foreign Wars of the United States, Dkt. 24, and the National Law School Veterans Clinic Consortium, Dkt. 59.

(1) the AMA overruled the pre-AMA implicit denial doctrine, and (2) even under the pre-AMA framework, the implicit denial doctrine cannot apply to a request to reopen a character of discharge determination when the VA provided only a service connection decision for the purposes of health care benefits. Appellant Br. 13–34. We hold that under the AMA, a veteran's claims can no longer be implicitly denied.[2] We accordingly vacate the Veterans Court's order dismissing Mr. Hamill's petition and denying his RCA, and remand for the court to reconsider the mootness issue.

## I.   Implicit Denials Under the AMA

This case presents an important issue of first impression: the role of implicit denials under the AMA. We begin

---

[2]   Though we hold the implicit denial doctrine does not apply under the AMA, we are skeptical that it should apply in this case even under the pre-AMA framework. Our implicit denial doctrine precedent suggests that, in order for the denial of one claim to implicitly deny another, the two claims must be factually the same or factually similar. *See, e.g.*, *Steele v. Collins*, 135 F.4th 1353, 1361–62 (Fed. Cir. 2025) (implicitly denying service connected benefits for headaches based on a denial of compensable service connection for head injury); *Cogburn v. McDonald*, 809 F.3d 1232, 1235–37 (Fed. Cir. 2016) (implicitly denying service connected benefits for psychiatric disability based on denial of service connected benefits for PTSD); *Hampton v. McDonough*, 68 F.4th 1376, 1380–82 (Fed. Cir. 2023), *cert. denied*, 144 S. Ct. 570 (2024) (implicitly denying total disability and individual unemployability claims based on denial of an increase in disability rating); *Adams v. Shinseki*, 568 F.3d 956, 962–65 (Fed. Cir. 2009) (implicitly denying service connected benefits for a condition secondary to rheumatic heart disease based on denial of rheumatic heart disease).

by summarizing our pre-AMA implicit denial doctrine, then discuss the AMA's changes to the veterans appeals framework, and finally analyze whether Congress intended the VA to be able to implicitly deny claims when it enacted the AMA. We conclude that Congress eliminated the judicially-created implicit denial doctrine when it enacted the AMA.

## A. The Implicit Denial Doctrine

"The 'implicit denial' rule provides that, in certain circumstances, a claim for benefits will be deemed to have been denied, and thus finally adjudicated, even if the [VA] did not expressly address that claim in its decision." *Adams v. Shinseki*, 568 F.3d 956, 961 (Fed. Cir. 2009). As we recently explained, the condition precedent for the application of this doctrine is that:

> [The] regional office decision "discusses a claim in terms sufficient to put the claimant on notice that it was being considered and rejected . . . even if the formal adjudicative language does not specifically deny that claim."

*Steele v. Collins*, 135 F.4th 1353, 1358 (Fed. Cir. 2025) (quoting *Adams*, 568 F.3d at 962–63). "[T]he key question in the implicit denial inquiry is whether it would be clear to a reasonable person that the [VA's] action that expressly refers to one claim is intended to dispose of others as well." *Adams*, 568 F.3d at 964. Accordingly, we have stated that "the implicit denial rule is, at bottom, a notice provision," *id.* at 965, applying only when a claimant received "adequate notice of, and an opportunity to respond to, the [VA's] decision," *Steele*, 135 F.4th at 1358 (quoting *Adams*, 568 F.3d at 965); *see also Cogburn v. McDonald*, 809 F.3d 1232, 1236 (Fed. Cir. 2016). While we upheld the application of the implicit denial rule to several veterans claims pre-dating the AMA, we have not addressed the applicability of the doctrine to claims subject to the AMA regime. *See, e.g.*, *Steele*, 135 F.4th at 1361–62; *Adams*, 568 F.3d at 962–65;

*Cogburn*, 809 F.3d at 1235–37; *Deshotel v. Nicholson*, 457 F.3d 1258, 1261–62 (Fed. Cir. 2006); *Hampton v. McDonough*, 68 F.4th 1376, 1380–82 (Fed. Cir. 2023), *cert. denied*, 144 S. Ct. 570 (2024).

### B.   The Appeals Modernization Act

Congress enacted the AMA in 2017 "to reform the rights and processes relating to appeals of decisions regarding claims for benefits under the laws administered by the Secretary of Veterans Affairs . . . ." Pub. L. No. 115-55, 131 Stat. 1105 (2017).  Through the AMA, Congress overhauled the legacy appeals system and created a "new appeals system."  *Id.*, 131 Stat. 1115.  This new appeals system "appl[ies] to all claims for which notice of a decision under section 5104 of title 38, United States Code, is provided by the Secretary of Veterans Affairs on or after" February 19, 2019.[3]    *Id.*; VA Claims and Appeals Modernization, 84 Fed. Reg. 2449 (Feb. 7, 2019).

Prior to the AMA, a veteran who disagreed with a VA regional office (RO) decision had a single path for appeal.  First, the veteran would file a Notice of Disagreement to the RO.  38 C.F.R. §§ 19.20, 19.21.  The RO would then provide the veteran a Statement of the Case (SOC), which had to be "complete enough to allow the appellant to present written and/or oral arguments before the Board of Veterans' Appeals" and had to contain:

(a) A summary of the evidence in the case relating to the issue or issues with which the appellant or representative has expressed disagreement;

(b) A summary of the applicable laws and regulations, with appropriate citations, and a discussion

---

[3]    This undisputedly includes Mr. Hamill's 2021 VA decision.

of how such laws and regulations affect the determination; and

(c) The determination of the agency of original jurisdiction on each issue and the reasons for each such determination with respect to which disagreement has been expressed.

38 C.F.R. § 19.29. Next, to perfect his appeal, the veteran would have to file a Substantive Appeal form "set[ting] out specific arguments relating to errors of fact or law made by the agency of original jurisdiction in reaching the determination, or determinations, being appealed." 38 C.F.R. § 19.22.

Now, under the AMA regime, a veteran dissatisfied with a VA decision has a broader range of options to choose from based on his needs. These options include seeking higher-level review, filing a supplemental claim, or filing a notice of disagreement to pursue one of three appeal lanes before the Board of Veterans' Appeals (Board)—some of which allow for new evidence, a hearing, or both; others which do not. 38 U.S.C. §§ 5104C, 7105(b)(3). SOCs and Substantive Appeal forms are no longer part of the appeals process, *id.*, so the VA's initial decision plays a key role in informing veterans which review option to pursue. *See* VA Claims and Appeal Modernization, 83 Fed. Reg. 39,818, 39,820 (Aug. 10, 2018) ("Enhanced decision notices will allow claimants and their representatives to make more informed choices about whether to seek further review and, if so, which of the new review lanes best fits the claimant's needs . . . .").

Recognizing the importance of the VA's initial decisions in veterans' decision-making under the new appeals system, Congress sought to enhance the quality of decisions the VA issues to veterans regarding their claims. This is evidenced clearly by the statutory text, which Congress amended to establish a heightened notice requirement for

VA decisions.   Both pre-AMA and AMA versions of 38 U.S.C. § 5401(a) require that:

> In the case of a decision by the Secretary under section 511 of this title affecting the provision of benefits to a claimant, the Secretary shall, on a timely basis, provide to the claimant (and to the claimant's representative) notice of such decision. The notice shall include an explanation of the procedure for obtaining review of the decision.

38 U.S.C. § 5401(a) (2016); 38 U.S.C. § 5401(a) (2017).  Under the pre-AMA version of 38 U.S.C. § 5401, however, the notice requirements were relatively sparse, stating that:

> In any case where the Secretary denies a benefit sought, the notice required by subsection (a) shall also include (1) a statement of the reasons for the decision, and (2) a summary of the evidence considered by the Secretary.

38 U.S.C. § 5401(b) (2016).  By contrast, Congress significantly heightened the statutory notice requirements in the AMA regime, demanding that:

> (b) Each notice provided under subsection (a) shall also include all of the following:
>
> > (1) Identification of the issues adjudicated.
> >
> > (2) A summary of the evidence considered by the Secretary.
> >
> > (3) A summary of the applicable laws and regulations.
> >
> > (4) Identification of findings favorable to the claimant.
> >
> > (5) In the case of a denial, identification of elements not satisfied leading to the denial.

(6) An explanation of how to obtain or access evidence used in making the decision.

(7) If applicable, identification of the criteria that must be satisfied to grant service connection or the next higher level of compensation.

38 U.S.C. § 5104(b) (2017).[4]

The legislative history surrounding the adoption of the AMA consistently reenforces Congress' intent to require clear and *explicit* notice. For example, the Senate report on the AMA states the AMA would require the VA to "*enhance* the information included in notifications of decisions on claims for benefits" and "modify [the VA's] claims decision notices to ensure they are *clearer and more detailed.*" S. REP. NO. 115-126, at 6, 31 (2017) (emphases added). As the report explains, "[t]his notice would help Veterans and their advocates make informed choices as to which a [sic] review option makes the most sense." *Id.* at 31. The House report similarly states:

To help veterans *better understand* VA's decision on their claims, the bill includes a statutory requirement that VA issue detailed decision notification letters. Under the bill, a decision letter would include a summary of the evidence, a summary of applicable laws and regulations, an explanation of how the veteran may obtain a copy of the evidence used in making the decision, and VA's favorable findings, if any. If the veteran's claim is denied, the letter would also explain why the claim was

---

[4]   Congress further amended Section 5104 in 2022 but did not make any changes to the relevant text in § 5104(a)–(b). Accordingly, for purposes of this opinion, we cite the current version of Section 5104 when discussing the "AMA version" of the statute.

> denied, and describe the evidence VA would need to grant service connection or the next higher-level of compensation. The intent of this provision is to help *better inform* the veteran's decision regarding whether to appeal VA's rating decision."

H.R. REP. NO. 115-135, at 3 (2017) (emphases added). Numerous statements from both legislators and stakeholders during the House's 2017 legislative hearing (some of which are reproduced below) emphasize the same point:

- "[Y]ou certainly shouldn't have to hire a lawyer when you are a veteran" to "demystify . . . very vague notice." *Legislative Hearing on the Veterans Appeals Improvement and Modernization Act of 2017: Hearing Before the H. Comm. On Veterans' Affairs*, 115th Cong. 22 (2017) (statement of Rep. Elizabeth Esty).

- "[T]he bill would require VA to modify its claims decision notices to ensure they are clearer and more detailed. This notice would help Veterans and their advocates make informed choices as to which review option makes the most sense." *Id.* at 33 (statement of David C. Spickler, Exec. In Charge, Acting Vice Chairman, Board of Veterans' Appeals).

- "I can't stress the importance of improved notification notices enough. It is transparency, and it arms veterans to navigate their own benefits. I can't stress it enough." *Id.* at 22 (statement of Ryan M. Gallucci, Dir., Nat'l Legislative Serv., Veterans of Foreign Wars of the U.S.).

- "The declining quality of VA rating decisions and notice has been cited by stakeholders numerous times over the years as the primary problem in the claims process. The participants in VA's appeals summit agreed that detailed notice of the rating decision is critical to making an informed decision

regarding further review.  Proper notice allows a veteran to understand the reasons for the underlying rating decision and enables an advocate to provide a veteran with the best possible advice on the evidence needed to prove a claim.  Because the new framework detailed in this bill would offer a veteran three choices after a denial of benefits, quality notice is critical." *Id.* at 51 (statement of Nat'l Org. of Veterans' Advocates, Inc.).

There really is no room for disagreement.  The AMA not only changed the overall structure of the veterans appeals system but deliberately and clearly heightened the notice requirement for VA's initial decisions beyond what was previously acceptable in the pre-AMA regime.

C.   Impact of the AMA on the Implicit Denial Doctrine

In view of the substantial changes to the veterans appeals system detailed above, Mr. Hamill argues the AMA is fundamentally incompatible with our pre-AMA judicially-created implicit denial doctrine such that his 2021 VA decision—which addressed only the service-connection issue for his claimed conditions—could not implicitly deny his request to reopen his discharge determination.  Appellant Br. 5, 14–27.  We agree with Mr. Hamill that it was legal error for the Veterans Court to conclude otherwise.  Correctly interpreted, the AMA version of 38 U.S.C. § 5104(b) precludes the VA from implicitly denying veterans claims.

"We assume Congress means what it says and says what it means." *Metro. Area EMS Auth. v. Sec'y of Veterans Affs.*, 122 F.4th 1339, 1345 (Fed. Cir. 2024).  When Congress amended 38 U.S.C. § 5104(b) to require VA decisions to include an "[i]dentification of the issues adjudicated," we assume Congress meant for VA decisions to include precisely that.  Indeed, even the VA has recognized, by regulation, that the requirements of 38 U.S.C. § 5104(b) must be met by "[w]ritten notification."  38 C.F.R. § 3.103 (2019).

It would make little sense for the implicit denial doctrine—a judicial construct created under the legacy system—to proceed unchanged in light of this clear statutory directive for explicit notice of what issues a decision adjudicates. *See Nw. Airlines, Inc. v. Transp. Workers Union of Am., AFL-CIO*, 451 U.S. 77, 95 n.34 (1981) ("[O]nce Congress addresses a subject, even a subject previously governed by federal common law, the justification for lawmaking by the federal courts is greatly diminished. Thereafter, the task of the federal courts is to interpret and apply statutory law, not to create common law.") And while the Government argues the implicit denial doctrine is not affected by the AMA's change to 38 U.S.C. § 5104(b) because "the doctrine was never about section 5104(b)," Gov't Br. 35, we do not agree. We cannot and will not flout the statute's express requirements. Through the AMA, Congress not only changed the structure of the veterans appeals system by eliminating the SOC and providing additional review options; it deliberately chose to require that veterans receive explicit, enhanced notice in the VA's initial decisions to enable veterans to choose an option best-suited to their needs. We must respect this legislative choice.

The Government does not argue (as surely it cannot) that Mr. Hamill's 2021 VA decision was compliant with the AMA's detailed notice requirements of 38 U.S.C. § 5104(b). Instead, the Government argues Mr. Hamill should have challenged any alleged noncompliance by pursuing higher-level review or filing an appeal with the Board (i.e., rather than seeking mandamus to obtain an appealable decision, which the Government claims Mr. Hamill already had based on the implicit denial doctrine). Gov't Br. 29–30. We agree there is a distinction between the minimum requirements for an appealable decision and one that fully complies with 38 U.S.C. § 5104(b). But for a decision to be appealable, it must still put the veteran on notice that his issue has been adjudicated. After all, no veteran can appeal a decision he does not understand to have been made.

14                                      HAMILL v. COLLINS

Accordingly, we hold that under the AMA, a veteran has
an appealable decision for a particular issue only if the de-
cision gives him *explicit* notice that the issue is being adju-
dicated and how it is being decided.[5,6]  Mr. Hamill's 2021

---

[5]    To be sure, we do not hold that any magic language
or format is required.  For example, a decision that explic-
itly identifies all the issues adjudicated but proceeds to
deny all claims without separately naming them would
likely be sufficient for the veteran to have an appealable
decision as to those issues—even if it would not be compli-
ant with the remainder of the notice requirements detailed
in § 5104(b).  Under such circumstances, the veteran could
appeal the failure to comply with the other requirements of
§ 5104(b) (e.g., the requirement that the decision include
"[a]n explanation of how to obtain or access evidence used
in making the decision" or the requirement that the deci-
sion include an "identification of elements not satisfied
leading to the denial").  Congress quite intentionally re-
quired that AMA decisions contain such detailed infor-
mation because this information would likely impact which
of the many review options the veteran ought to pursue.

[6]    Once a veteran receives an appealable decision for
a particular issue, we agree with the Government that he
can, and *must*, timely seek higher-level review or appeal of
that issue to the Board—rather than petition the Veterans
Court for mandamus relief—to challenge compliance with
38 U.S.C. § 5104(b).  This is true even if the VA's decision
is appealable as to some issues but not others.  "[I]t is es-
tablished that the extraordinary [writ of mandamus] can-
not be used as substitutes for appeals, . . . and whatever
may be done without the writ may not be done with it."
*Bankers Life & Cas. Co. v. Holland*, 346 U.S. 379, 383
(1953).  Accordingly, a veteran cannot obtain mandamus
relief at the Veterans Court after failing to timely chal-
lenge an appealable, but arguably non-compliant, VA

VA decision did not meet this explicit notice requirement and could not, as a matter of law, implicitly deny his request to reopen his character of discharge determination.

The Government raises concerns with Congress' elimination of the judicially-created implicit denial rule, many of which are overstated. For example, the Government argues ending implicit denials would route claimants away from the AMA's statutory process for appellate review in favor of "drastic and extraordinary" mandamus relief and lead to "indefinite waiting" by claimants that would "create an unknown number of pending claims" and detract from the AMA's accountability objectives. Gov't Br. 32–33. All of this, however, is entirely avoidable if the VA fulfills its statutory obligations and follows Congress' simple and clear directive to include an "[i]dentification of the issues adjudicated" in its initial decisions. 38 U.S.C. § 5104(b)(1). If there are problems in the future, they will be entirely of the Government's making. Moreover, the effect of our decision on previously-issued VA decisions is limited because it applies only to claims subject to the AMA and does not affect veterans claims under the legacy system. 38 U.S.C. § 101 note (Effective Date of 2017 Amendment); *see also* Oral Arg. at 18:26–19:19 (Gov't admission); *id.* at 40:38–41:08 (Mr. Hamill admission). Finally, to the extent the Government's concerns are policy-driven, the Supreme Court has explained, "'even the most formidable' policy arguments cannot 'overcome' a clear statutory directive." *BP P.L.C. v. Mayor & City Council of Baltimore*, 593 U.S. 230, 141 S. Ct. 1532, 1542 (2021) (quoting *Kloeckner v. Solis*, 568 U.S. 41, 55 n.4 (2012)).

---

decision. *See* 38 U.S.C. § 5110 (setting forth deadlines for pursuing AMA review options).

## II.  Mootness

We next turn to the issue of mootness.  Our conclusion that Mr. Hamill's 2021 VA decision could not implicitly deny his character of discharge claim necessarily means his petition to the Veterans Court, which sought to compel adjudication, was *not* moot when it was filed in 2022.  This, however, does not end the inquiry.

There remains an open question regarding the effect of the VA's February 2023 letter to Mr. Hamill, which explicitly found Mr. Hamill had not submitted new and material evidence to warrant reopening his discharge determination.  J.A. 76–78.  The panel majority acknowledged that, if Mr. Hamill's petition was not mooted until he received this letter, "then Mr. Hamill could reasonably argue that, although he'd received his requested relief, the inherently transitory and picking off exceptions to mootness might allow the class he described to go forward."  J.A. 5.  The Veterans Court did not conduct this analysis in the first instance, however, because it concluded "[t]he implicit denial doctrine . . . resolve[d] the controversy."  *Id.*

"While an appellate court has 'inherent jurisdiction to determine whether a lower tribunal had jurisdiction,' . . . it also has discretion to remand issues, even jurisdictional ones, to the [lower] court when that court has not had the opportunity to consider the issue in the first instance."  *Salmon Spawning & Recovery All. v. U.S. Customs & Border Prot.*, 550 F.3d 1121, 1134 (Fed. Cir. 2008) (citation omitted).  We exercise that discretion here and remand to the Veterans Court to consider, in the first instance, whether an exception to mootness applies.

## CONCLUSION

We have considered the parties' remaining arguments and find them unpersuasive.  For the foregoing reasons, we (1) vacate   the   Veterans   Court's   order   dismissing

HAMILL v. COLLINS                                                    17

Mr. Hamill's petition and denying his RCA, and (2) remand for further proceedings consistent with this opinion.

**VACATED AND REMANDED**

COSTS

Costs to Mr. Hamill.